74328. MILES v. THE STATE.

(358 SE2d 904)

BIRDSONG, Chief Judge.

Patricia B. Miles appeals her conviction for forgery in the first degree, on the general grounds and on the basis of improper comments by the prosecutor during trial and closing arguments. *Held*:

1. The subject of the forgery was a money order mailed by John Nickerson to his wife Euricka Nickerson. The evidence showed Mrs. Nickerson was expecting the money order from her husband and did not receive it. On February 3, 1986, one Vickie Cochran called Modern TV and Appliances, where she had an account for a rent-to-own

television, and asked the secretary-bookkeeper, Ms. Fangman, if she could cash a check for a friend who had no identification because her wallet had been stolen. Cochran expressed the intent to make a payment on her account with part of the money. Ms. Fangman, who had known Cochran about three years, agreed; later Vickie Cochran and another woman arrived at the store and approached the counter, telling the salesman Martin that Ms. Fangman had agreed to cash this money order. Ms. Fangman, upon being called by Martin, went to the counter, was handed the money order in the amount of $290, and seeing the name Euricka Nickerson endorsed on the back, said to the woman with Vickie Cochran, "You are Euricka Nickerson?" To this the woman said: "Yes, I am." Ms. Fangman cashed the money order and gave the money to the woman, who then gave Cochran $50 to pay on her account, and the two left.

A few weeks later, Det. Wiggins came to the store inquiring about a forged money order that had been traced to Modern TV & Appliances. Ms. Fangman, upon looking at her records, gave the detective the name and address of Vickie Cochran, and described the woman who had been with her. Ms. Fangman testified she well remembers persons who come into the store; she remembered this woman because she was on eye-level with Ms. Fangman, who is about 5 feet 2 inches tall, and because she was shorter than Cochran. She remembered the woman also by her complexion, mouth structure, and hairstyle. After being given the name and address of Vickie Cochran, the detective spoke again to Mrs. Nickerson and learned that Vickie Cochran's sister lived in Mrs. Nickerson's apartment building, directly below Mrs. Nickerson and just a few feet from the apartment's mailboxes. The detective then compiled a photographic line-up of six persons, including Vickie Cochran and appellant Patricia Miles. He returned to the store and exhibited the photographic line-up to Ms. Fangman, who unhesitatingly picked out Vickie Cochran and appellant Patricia Miles.

Ms. Fangman identified appellant at trial as the woman who had accompanied Vickie Cochran and professed to be Euricka Nickerson, and stated she was and had been 100 percent positive in her identification. At trial, Mrs. Nickerson identified a money order made out to her and endorsed by a signature of Euricka Nickerson which was not her signature. Appellant adamantly denied knowing anything about a forgery and testified she had been with her boyfriend Johnny Farley on the day of the forgery, but had not ever told the detective this because he never asked, although she went to the detective earnestly seeking to clear herself in the six months before trial. Johnny Farley testified, saying appellant could not have done the forgery because she was with him, but he admitted never having told her lawyer this or talked to her lawyer except for two minutes during a recess of this

trial.

Vickie Cochran testified Pam Wilson was a friend, that she and Pam had been at Vickie's sister Patricia Miles' apartment. Pam Wilson went outside to the mailboxes and returned saying Nickerson had some mail; Pam got a butter knife and pried Nickerson's mailbox open and extracted three letters, one of which contained the money order. Cochran testified it was Pam's idea to cash the check, and Cochran called Modern TV & Appliances and arranged to cash it there. Cochran testified that when she and Pam Wilson returned, they divided the money three ways among herself, Pam Wilson, and appellant.

Pam Wilson testified that she had committed the forgery at Vickie Cochran's behest. She stated she went with Cochran to the store, where a man with black hair and a bald spot on his head waited on them; that a woman did not wait on them or cash the money order, but that she saw a woman with long blond hair in the office. Ms. Fangman, however, testified she had not had long hair in seven years, that Martin's hair was grey, not black, and he had no bald spot as Pam Wilson had testified. Martin testified; he could not identify the woman who had accompanied Vickie Cochran, but said his hair was grey and he had no bald spot as Pam Wilson testified.

This evidence is such that a reasonable trier of fact could rationally find proof of Patricia Miles' guilt beyond a reasonable doubt, in the crime of forgery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Boyd v. State*, 244 Ga. 130, 132 (259 SE2d 71); *Turner v. State*, 151 Ga. App. 169, 170 (259 SE2d 171). The verdict is not contrary to the evidence or to the weight of the evidence or to justice. Appellant's objection on the general grounds is therefore without merit.

2. Appellant contends she was deprived of a fair and impartial trial by repeated improper remarks of the prosecutor. She objected to the prosecutor's statement that the defense intended to "run in a ringer"; to the statement that lawyers say what they are paid to say; to the query why checks are easily cashed by "crooks" but not for others; that the defense attorneys' repeated objections to his closing argument were "unethical"; that the defendants were "liars"; and that they had "harassed" the investigating detective. She also objected to the prosecutor's attempts to intimidate the witness Pam Wilson by threatening to prosecute her for perjury.

Under *Hall v. State*, 180 Ga. App. 881 (350 SE2d 801), appellant urges she was not required to move for mistrial or repeat objection to an un-cured comment, in order to draw this court's attention to the infectious nature of such comments on appeal. She is correct, but in *Hall*, we also said that if the trial court is not requested to take further curative action, this failure to act cannot be addressed on appeal

as error, although the original improper statement may be examined for reversible error. It is true that most of the objections raised were not addressed by the trial court, nor was any effort made in most of these instances to mollify their effect. We do not find, however, that the prosecutorial commentary addressed at the defendants was so invidious as to deny appellant a fair trial or render the guilty verdict suspect. The prosecutor's statement in closing argument that defense counsel's repeated objections were "unethical," was, as a bare statement, unquestionably improper; however, it cannot be said on appeal and review of this evidence, that it was so inflammatory as against the *appellant* as to obscure the truth of any evidence in her favor and call down a verdict of guilt upon her not otherwise proved beyond a reasonable doubt. That is to say, it probably did not affect the verdict. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 17, 1987.

*H. Haywood Turner III*, for appellant.

*William J. Smith, District Attorney, J. Gray Conger, Assistant District Attorney*, for appellee.