A92A0668. QUINN v. THE STATE.
(433 SE2d 592)

McMURRAY, Presiding Judge.

Via indictment, defendant was accused of two counts of aggravated assault (Counts 1 and 2), criminal damage to property in the second degree (Count 4), and possession of a firearm by a convicted felon (Count 3). More specifically, with regard to the assault and criminal damage counts, the indictment alleged that on or about November 30, 1991, defendant shot at Lewis Burns (Count 1) and Lee Burns (Count 2), and damaged Lee Burns' truck by shooting a bullet into the side of it (Count 4). Following a jury trial, defendant was convicted upon Counts 1 and 4 of the indictment. (Defendant was acquitted upon Count 2; Count 3 was nolle prossed.) He was sentenced to serve twenty years on Count 1 and five years on Count 4 and he moved for a new trial. The trial court denied the motion for a new trial and defendant appealed. *Held:*

1. In his first enumeration of error, defendant asserts the evidence was insufficient to enable a rational trier of fact to find defendant guilty of aggravated assault beyond a reasonable doubt. We disagree.

Viewing the evidence in a light favorable to the State, as we are bound to do, we find the following: On the day in question, Lee Burns and his father, Lewis Burns, were returning from a hunting trip. Lee Burns was driving; Lewis Burns was in the passenger seat. They took a detour on a country road so Lee Burns, a Georgia Forestry Commission fire fighter, could show his father where he had put out a fire a few days previously. They drove past defendant who was standing out in a field, carrying a pistol. The road came to an end and they turned around. They approached defendant; he was now standing on the side of the road, facing the passenger side of the truck. They slowed down "to talk to him, be polite . . . and just mosey on. . . ." The next thing they knew, defendant raised the gun to "an aiming level," pointed it in Lewis Burns' direction, and fired. Lewis Burns knew that defendant fired a shot at him. Lee Burns did not see defendant shoot the gun; but he heard the shot and drove off hurriedly. When

he was out of defendant's sight, Lee Burns stopped the truck. Lewis Burns examined the truck and observed a bullet hole on the passenger's side, "right behind [him]." He was scared.

We have no hesitation in concluding that the evidence was sufficient to support defendant's conviction for aggravated assault beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Meriwether v. State*, 204 Ga. App. 113 (2) (418 SE2d 451). "[I]ntentionally firing a gun at another, absent justification, is sufficient in and of itself to support a conviction of aggravated assault. See *Williams v. State*, 249 Ga. 6, 8 (287 SE2d 31) (1982). See generally OCGA § 16-5-21 (a) (2)." *Steele v. State*, 196 Ga. App. 330 (2), 331 (396 SE2d 4).

2. In his second enumeration of error, defendant contends the trial court erred in admitting his gun into evidence. In this connection, defendant points out that he was not given a *Miranda* (*Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694)) warning before he gave the gun to the officer who arrested him. We find no merit in this enumeration of error.

The arresting officer testified that he obtained an arrest warrant for defendant and went to defendant's house to arrest him. Before he placed defendant under arrest, the officer told defendant about the shooting incident, adding that he was "not quite clear on everything that happened," but that he did know that a "shiny nickel weapon" was used in the incident. Then he asked defendant if he owned a similar weapon. Defendant replied that he did; he "went inside," brought the gun out and "voluntarily" gave it to the officer. Thereupon, the officer placed defendant under arrest, advised him of his rights, and put him in a police vehicle.

In *Ingle v. State*, 123 Ga. App. 56 (179 SE2d 305), defendant's automobile was seen leaving a house that had been burglarized and the license plate number was given to the police. Armed with a warrant to search the automobile, the police proceeded to the defendant's house, served him with the warrant, and conducted the search. When the police told the defendant about the burglary and suggested that someone else may have been driving the automobile, the defendant replied that he was the only one who had been driving it. The defendant asserted that his statement should not have been admitted in evidence because he was not advised of his *Miranda* rights. This court scrutinized the meaning of an "in-custody interrogation" and disagreed. Quoting from *Miranda*, the court observed: " 'By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' . . . 'An understanding of the nature and setting of this in-custody interrogation is essential to our decisions today.' " Id. The court continued its anal-

ysis, noting that *Miranda* then went on "to give examples ranging from physical brutality to prolonged questioning, which take place in privacy and represent an effort, physically or psychologically oriented, to obtain admissions or a confession from the person who has in the interrogator's judgment become the prime suspect and against whom he is proceeding, at least in his own mind, in an accusatory rather than a generally investigative framework." Id. With the essence of an "in-custody interrogation" in mind, the court concluded: "This is not the sort of 'in-custody interrogation' forbidden by the Miranda case without prior warning to the defendant, regardless of whether the peace officer, who had not arrested the defendant at that point, would have done so if he had attempted to leave the scene. The testimony was admissible. . . ." Id.

In the case sub judice, defendant was asked whether he had a gun when he was approached initially by the arresting officer. As the court said in *Ingle*, supra, "[t]his is not the sort of 'in-custody interrogation' forbidden by the Miranda case. . . ." After all, "[t]he issue of custody involves an objective standard: Would a reasonable person in the defendant's situation have believed that he was physically deprived of his freedom of action in any significant way? If not, he is not subject to the compulsive atmosphere of an actual arrest, and *Miranda* does not apply. [Cits.]" *Childs v. State*, 257 Ga. 243, 247 (357 SE2d 48). In our view, a reasonable person in defendant's shoes would not have believed that his freedom was curtailed in a significant way when he was first approached by the arresting officer, told about the shooting incident, and asked if he had a gun. Accordingly, we find no error in the admission of the gun into evidence.

3. " 'Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. (Cit.) The burden is on the State "to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution." (Cits.) The State need not negative every possibility of tampering, and "need only establish reasonable assurance of the identity" of the evidence. (Cit.)' *Anderson v. State*, 247 Ga. 397, 399 (2) (276 SE2d 603) (1981)." *Ealy v. State*, 203 Ga. App. 219, 221 (2) (416 SE2d 559).

The State showed with "reasonable certainty" that the bullet offered into evidence remained in the custody of law enforcement personnel and the crime laboratory, that it had not been tampered with, and that it was the same as that taken from Lee Burns' truck. It follows that the State established a proper chain of custody for the bullet and that the trial court did not err in admitting it into evidence. Defendant's third enumeration of error is without merit.

4. The trial court did not err in permitting evidence of a photographic lineup and Lewis Burns' identification of a photograph of de-

fendant in the lineup. The photographic lineup was by no means unduly suggestive and Lewis Burns' in-court identification was not tainted in any way. *Zilinmon v. State*, 234 Ga. 535 (1) (216 SE2d 830); *Duffey v. State*, 151 Ga. App. 673, 674 (2) (261 SE2d 421).

Contrary to defendant's assertion, *Duffey v. State*, supra, does not stand for the proposition that evidence of a photographic lineup is only admissible in rebuttal. Although other jurisdictions may not permit testimony of a photographic identification during the State's case-in-chief, e.g., *People v. Hines*, 491 NYS2d 764, 765 (1985), this jurisdiction does. *Zilinmon v. State*, 234 Ga. 535 (1), supra.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED JUNE 1, 1993 —
RECONSIDERATION DENIED JULY 14, 1993 —

*Bates & Baum, Beverly B. Bates*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.