A94A2640. DUMAS v. THE STATE.
(455 SE2d 354)

RUFFIN, Judge.

Anthony Dumas was convicted of aggravated assault, armed robbery, and possession of a firearm during a crime and appeals the judgment of conviction and sentence.

The victim in this case was the manager of a convenience store who testified to the following events: On December 1, 1992, he closed the store at approximately 10:15 p.m. As he was locking the door, he saw Dumas and his mother, both of whom frequented the store, sitting on the porch of the mother's house, which was located next to the store. Dumas then jumped from the porch and approached him. Dumas was wearing dark sunglasses and the victim asked "Antonio, what are you doing with shades on this time of night?" Dumas then put a gun to the victim's head, demanded the money from the store and pulled the trigger, but the gun did not fire. He hit the victim on the head with the gun causing the victim to fall and break his hip.

Dumas took the victim's wallet, demanded to know where the store's money was kept, and shot him in the leg.

Two eyewitnesses to the crime contacted the police that night. They told the police the assailant was related to a woman in the building next to the store. The eyewitnesses picked Dumas out of a photographic lineup and identified him as the assailant in the robbery and assault. The victim also picked Dumas's picture out of a lineup.

Dumas presented three alibi witnesses. Roger Dixon testified that on the evening of the incident, Dumas came to his house at approximately 7:30 and drank beer for several hours. Dixon also testified that at approximately 10:00 or 10:30 he took Dumas to a motel and got a room for him because Dumas did not have any identification. Dixon stated he drank beer with Dumas for a couple of hours at the motel and then left. Dixon's brother, Willie Harvey, testified that sometime in December he loaned his truck to Dixon so that Dixon could take Dumas to a motel. Finally, Bob Patel, the motel manager, identified a registration card showing that Dixon had rented a room on December 1, 1992. Dumas never testified.

In his sole enumeration of error, Dumas contends that the trial court committed reversible error by failing to grant a mistrial when the State impermissibly commented on his failure to testify.

In his closing argument, the prosecutor outlined the evidence the jurors had heard. He stated the following: "The defendant has called a series of witnesses. . . . They are going to rely on [the motel registration card]. . . . Nowhere on that [card] are you . . . going to be able to read that this individual, Mr. Dumas (indicating) was not there . . . on December 1, 1992 out there on DeKalb Avenue standing over [the victim]. . . ." The prosecutor then summarized the testimony from the State's witnesses, concluding with the following: "At any time did you hear any witness take that stand and say [Dumas] didn't do it? . . . No. Witness after witness after witness said . . . he did it, he did it, he did it (indicating).

"[The defendant's attorney] is going to get up and create smoke and rant and rave, oh, boy, she's going to give you a list. This person went A, B, C. This person went A, B, C, D. That does not make sense. They're mistaken. And then I want you to sit back and say, [to the defendant's attorney] you're right, . . . but where is that person who says he didn't do it?" The record indicates that while uttering this last sentence the prosecutor walked over to Dumas and pointed at him.

Dumas's attorney moved for a mistrial, arguing that the prosecutor had impermissibly commented on the defendant's failure to testify. The trial judge stated that by virtue of what the prosecutor had said and the manner and method in which the remark was made, the prosecutor was on "very dangerous ground" because the jury could

have been left wondering why Dumas did not testify. The judge also stated that the question of whether the prosecutor had commented on the failure of Dumas to testify was "very close." The prosecutor explained that he was not commenting on Dumas's failure to testify but was referring to the fact that all three alibi witnesses could have easily said "he didn't do it, he was with me," but none of them ever did. He further stated that had no alibi witnesses been called he would never have made the reference or used that type of argument.

"To find that a prosecutor's comment was directed at the defendant's failure to testify, and constituted reversible error, the reviewing court must determine that . . . 'the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' [Cit.]" *Postell v. State*, 200 Ga. App. 208, 215-216 (6) (407 SE2d 412) (1991).

In order to determine the natural and necessary impact of the statement on the jury, we must consider the context in which the statement was made. *Reeves v. State*, 179 Ga. App. 474 (347 SE2d 260) (1986). In the instant case, the prosecutor outlined in sequential order Dumas's documentary evidence, the testimony from the State's witnesses and what the defense would likely say about the alibi witnesses. As he concluded his commentary on the State's witnesses, the prosecutor pointed to Dumas and asked "[d]id you hear any witness take that witness stand and say [he] didn't do it?" The ensuing comment and pointing complained of was the next logical step in the argument, i.e., that even the alibi witnesses never said Dumas "didn't do it." See *Martin v. State*, 193 Ga. App. 581 (4) (388 SE2d 420) (1989) (context of prosecutor's statement that Martin has not presented any evidence to prove he did not commit the crime shows the statement was a logical progression in the argument and not an impermissible comment on the defendant's failure to testify).

"[T]he trial judge in passing upon a motion for mistrial on account of alleged improper argument is vested with a broad and sound discretion, and his ruling will not be controlled by this court unless manifestly abused. [Cit.]" (Citation and punctuation omitted.) *Martin*, supra at 587. For the reasons outlined above, we cannot say the trial judge abused its discretion in denying Dumas's motion.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 14, 1995.

*Jennifer B. Mann*, for appellant.

*J. Tom Morgan, District Attorney, Desiree S. Peagler, Assistant District Attorney*, for appellee.