## A95A1469. EDWARDS v. THE STATE.
(464 SE2d 851)

RUFFIN, Judge.

Johnnie Edwards was convicted of one count of trafficking in cocaine. Without conducting a presentence hearing, the court sentenced Edwards to 25 years to serve and a one million dollar fine. Edwards enumerates nine errors. For the reasons which follow, we affirm.

Just before midnight on February 11, 1992, Lieutenant Robbie Bishop observed a Chevrolet Caprice passing his parked patrol car at a very slow speed on Interstate 75 North. Bishop followed the vehicle and determined it was proceeding at 45 mph in a 65 mph zone. Bishop testified that the reason he decided to pull the car over was because it had no tag and that he routinely stopped cars traveling without license tags displayed. Upon stopping the vehicle, Bishop noticed the hands of Frederick Rawls, the driver, were trembling and his whole body was shaking. Bishop testified that based on his experience, the behavior of an individual stopped for suspected possession of drugs differs from the behavior of someone stopped for an improper display of a tag. He also observed a peculiar bulge in the back seat cushion. Because of the apparent nervousness of the driver, the unusual bulge in the back seat, and the discovery that the driver and

the vehicle were from different states, Bishop requested consent to search the vehicle, and Edwards, the sole passenger and the vehicle owner, consented to the search. Through a cursory search, Bishop was able to determine that the bulge was not caused by a broken spring and radioed for help. Bishop testified Edwards and Rawls agreed to wait while his back-up arrived. Bishop testified Edwards also gave his consent to Officer Johnson's assistance with the search for drugs. Their subsequent search disclosed that the rear seat was bolted down by special star type screws. A blue coat discovered in the trunk contained a star socket that matched the bolts in the rear seat. After both men had been read their *Miranda* rights, a deputy asked who owned the blue coat, and Edwards stated it belonged to him. Officers discovered 11 kilograms of cocaine concealed behind the rear seat.

1. Edwards contends the court's failure to conduct a presentence hearing violated OCGA § 17-10-2 (a).

Without holding a presentence hearing, the trial court imposed the mandatory minimum sentence, 25 years, for cocaine trafficking under OCGA § 16-13-31 (a) (1) (C). The State claims the court's non-compliance with OCGA § 17-10-2 (a) was harmless error because the remedy would be to remand the case for resentencing, which would be a waste of judicial resources given that the court would be required to resentence Edwards to the same sentence already imposed.

A court is required to conduct a presentence hearing in a felony case under OCGA § 17-10-2 (a). "The judge is to give opportunity for the parties to offer additional evidence and argument in extenuation, mitigation, and aggravation of punishment. It is mandatory. [Cits.]" *Jefferson v. State*, 205 Ga. App. 687 (2) (423 SE2d 425) (1992). In this case, however, because the sentence which the court imposed was the statutory minimum sentence under OCGA § 16-13-31 (a) (1) (C), the court did not err.

2. Edwards claims the court erroneously denied his motion for a mistrial because the State made numerous comments concerning his failure to testify and also made improper inflammatory remarks. Edwards challenges the propriety of eight statements used in the State's closing arguments.

(a) First, we examine the alleged references to Edwards' failure to testify. Two of the prosecutor's statements alluded to Edwards' failure to respond to statements made by the investigating officer at the scene of the investigatory traffic stop.[1] The record indicates that while

---

[1] Statement B: "And then later on the police officer has you out back behind the back of his car, and he says, 'I noticed the large bulge. I noticed a large bulge in the back seat. The back seat was sticking way out.' And you just stand there mute. If you don't know what he's talking about, and if you don't know. . . ." Statement C: "Now, you would say, well what do you mean? Let me see it. Show it to me. I don't know what you're talking about. You're

Bishop was conducting the stop, he told Edwards that he noticed "a large bulge, sticking way out." Edwards was not under arrest and elected to say nothing in response. In his closing argument, the prosecutor twice referred to Edwards' failure to respond to the officer's statement. The prosecutor pointed out that Edwards neither professed his ignorance about the bulge nor asked the officer what he was talking about when the officer said he noticed a large bulge.

The State contends the two statements should not be construed as comments on Edwards' silence because Edwards had not invoked his right to remain silent but instead, had volunteered information and engaged in conversation with Bishop, the investigating officer.

Pre-arrest silence has not been accorded the same federal constitutional protection as post-arrest silence. See *Doyle v. Ohio*, 426 U. S. 610 (96 SC 2240, 49 LE2d 91) (1976) (holding that the government cannot use post-arrest silence against a defendant because *Miranda* warnings give implicit assurances that silence will not be used against a person, and accordingly, it would be fundamentally unfair and a violation of due process to allow a defendant's silence to be used to impeach him at trial); *Jenkins v. Anderson*, 447 U. S. 231, 239 (100 SC 2124, 65 LE2d 86) (1980) (holding that the government can use pre-arrest silence for impeachment purposes against a defendant because no government action induced the silence). Based on *Jenkins*, supra, there is no federal constitutional basis for excluding the State's use of Edwards' pre-arrest silence against him. Accordingly, the State's references to Edwards' pre-arrest silence were properly permitted.

Edwards also contends *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991) entitles him to a mistrial. In *Mallory*, the trial court permitted the State to introduce the defendant's pre-arrest statement, made without *Miranda* warnings, as to why he had not come forward to explain his innocence when he knew he was under investigation. Id. In his pre-arrest statement, Mallory responded that he was waiting for the police to come to him. The Supreme Court determined this statement was improperly used against Mallory on cross-examination. Id. "OCGA § 24-3-36 provides that 'Acquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission.' We take this opportunity to hold that in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative. Accordingly,

---

saying my seat's sticking way out? Huh. If it is a surprise to you that your seat is bulging out and the officer's already told you that he wants to search for drugs, you're going to say, what? What do you mean, officer? Show it to me. You wouldn't just stand there and say nothing, unless you knew it. He knew exactly what he was talking about, and he didn't want to say anything about it."

from the date of publication of this opinion, December 26, 1991 . . . such a comment will not be allowed even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense." Id. at 630.

However, *Mallory* is distinguishable here because it analyzed impeachment of a defendant by the use of a defendant's failure to contact police prior to an arrest. In this case, Edwards did not take the stand in his own defense and was not, therefore, improperly confronted with his pre-arrest silence and failure to supply an explanation regarding the bulge in the rear seat of his vehicle. Accordingly, we do not find *Mallory* dispositive.

Further, "[r]eversal for improper comment by the prosecutor requires a finding either that 1) the prosecutor's manifest intention was to comment on the accused's failure to testify, or 2) the remark was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Ranger v. State*, 249 Ga. 315, 319 (290 SE2d 63) (1983)." *LeMay v. State*, 265 Ga. 73, 75 (4) (453 SE2d 737) (1995). In this case, the prosecutor did not comment on Edwards' failure to testify, but rather, on Edwards' failure to respond to the officer's initial questions *prior to arrest* about the obvious bulge in the back seat of his vehicle. Our review of the record and transcript does not show a manifest intention to comment on Edwards' failure to testify at trial or that the jury would have naturally and necessarily interpreted the remarks in that manner.

(b) Next, we examine the State's references to Edwards' failure to present certain evidence. The transcript indicates that Edwards contended he was an innocent man being unwittingly used by Rawls and that he had no idea cocaine was concealed in his vehicle. During closing argument, the prosecutor made four references to Edwards' failure to present evidence about his relationship with Rawls and the purported purpose of the trip. The State noted Edwards did not offer: 1) an explanation as to why he needed to give Rawls a ride, 2) any evidence of Rawls' relationship to him, 3) any evidence that the bulge was not visible to him, and 4) any evidence from or about his daughter, whom he told police he had dropped off in Atlanta.

It is permissible for the State to "argue to the jury the inferences to be drawn from the defendant's failure to produce witnesses . . . who allegedly would give evidence favorable to the defendant." (Citations omitted.) *Shirley v. State*, 245 Ga. 616, 618 (266 SE2d 218) (1980). Thus, it was entirely appropriate for the prosecution to point out inconsistencies in Edwards' defense strategy.

(c) Edwards argues the State improperly commented on his objection to the admission of the cocaine into evidence. At the outset, we reject the State's contention that Edwards failed to preserve this objection because the transcript shows defense counsel objected. See

*Hall v. State*, 180 Ga. App. 881 (350 SE2d 801) (1986). However, even assuming the State's comment was improper, we cannot say it is highly probable that the improper remark contributed to the verdict. Id. at 885. Thus, even if we were to determine the State's argument was improper and inflammatory, such argument did not likely affect the verdict and Edwards' conviction must be affirmed. *Miles v. State*, 183 Ga. App. 346 (358 SE2d 904) (1987) (holding that although State's argument was improper and inflammatory, conviction was affirmed because it probably did not affect the verdict).

(d) Next we address Edwards' contention that the State argued that if he were not convicted, three-year-olds will be gunned down in the street. Edwards claims he was entitled to a mistrial because of the allegedly improper and inflammatory comment.

According to the transcript, the prosecutor actually stated: "You know that stuff right there was destined to be one of those news stories in Cleveland, Ohio. It is so much cocaine, that if that cocaine had made it to Cleveland, Ohio, the news stories would have been out there about cocaine fights, and a three-year-old child mowed down." The prosecutor also stated: "Now, you know all of us know what this stuff is responsible for. It's hard not to go a week without watching the local news or the national news, for that matter, and hearing about a three-year-old child, including three-year-old black children, being mowed down in the inner cities —." Edwards moved for a mistrial after objecting to the prosecutor's closing.

" 'The trial judge in passing upon a motion for mistrial on account of alleged improper argument is vested with a broad and sound discretion, and his ruling will not be controlled by this court unless manifestly abused. [Cit.]' " *Dumas v. State*, 216 Ga. App. 643, 645 (455 SE2d 354) (1995). Based on the foregoing authority, we are unable to conclude that the trial court abused its discretion in denying Edwards' motion for a mistrial based on this or any of the eight separate comments by the prosecutor.

3. Edwards contends the court erred in denying his motion to suppress. Edwards claims that Bishop's initial stop was pretextual, lacked probable cause, and was based on a drug courier profile.

An initial investigative stop requires that the arresting officer have only reasonable, articulable suspicion not probable cause. *State v. Thomason*, 153 Ga. App. 345 (1) (265 SE2d 312) (1980). An officer may conduct a brief investigatory stop of a vehicle, if such stop is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. *Evans v. State*, 216 Ga. App. 21 (2) (453 SE2d 100) (1995). The specific, articulable suspicion must be based on the totality of the circumstances — objective observations, patterns of certain kinds of lawbreakers, and inferences drawn and deductions made by trained law enforcement personnel. See *Cheat-*

*ham v. State*, 204 Ga. App. 483 (1) (419 SE2d 920) (1992).

In this case, Bishop testified that he pulled the car over because it had no tag. He first noticed Edwards' car because it was proceeding abnormally slowly and he followed the car, observing it was traveling 20 mph below the posted speed on an interstate. Bishop also stated that he felt that there was a need to determine whether the driver might be under the influence due to the late hour of the night and his slow speed. Because the initial stop was based on a violation of OCGA § 40-2-41, as well as a need to determine whether the driver was under the influence, the stop was valid.

It is not disputed that Edwards consented to a search of his vehicle. Edwards contends, however, that he consented only to the initial search, which was fruitless, and that police conducted a second search without valid consent.

Edwards argues that even had he provided consent, because the stop was pretextual, proof of voluntary consent alone is insufficient to eliminate any taint from the illegally seized cocaine evidence. See *Brown v. State*, 188 Ga. App. 184 (372 SE2d 514) (1988). In *Brown*, supra, we reversed the defendant's conviction for trafficking in cocaine because the basis of the officer's stop was pretextual, an alleged improper lane change, utilized to try to develop a legal opportunity to search for and seize illegal drugs. The evidence showed that the actual basis of the stop was a purported match with the "drug courier profile" and no ticket or warning was issued to Brown. Despite the fact that Brown freely consented to a search of his vehicle, we reversed the trial court's denial of his motion to suppress because the stop was pretextual.

In this case, however, Edwards' vehicle had no tag displayed on the rear license plate area. Only after Bishop stopped the car was he able to see a cardboard temporary tag hanging in the rear window. Then, after Bishop stopped the vehicle he noticed both the driver and the passenger, Edwards, exhibited extreme nervousness. Bishop observed a peculiar bulge in the rear seat cushion, discovered the driver and the vehicle were from different states, and thought the stories given by Edwards and Rawls did not correspond. Unlike *Brown*, supra, the initial investigative stop here was not pretextual and intervening circumstances provided justification for the officer's subsequent conduct.

Finally, we note that on a motion to suppress the trial court "sits as the trier of fact and its findings should not be disturbed by this court if there is any evidence to support them. [Cit.]" *State v. Slater*, 207 Ga. App. 669 (428 SE2d 676) (1993). The record contains sufficient support for the trial court's denial of the motion to suppress.

4. Edwards claims the court erred by allowing the in-court identification of him by Carolyn Fowler. He argues that showing his driver's

license to her was impermissibly suggestive and created a substantial chance of misidentification.

The witness, an employee of a local motel chain, was shown Edwards' driver's license on February 20, 1992, nine days after Edwards stayed at the motel. When first interviewed by police, Fowler provided descriptions of both Edwards and Rawls. At trial, over four months later, Fowler identified Edwards as a man she recalled seeing on February 11, 1992, the day of the arrest.

In determining whether an in-court identification of a defendant is admissible, the trial court must determine whether the in-court identification is independent of the photo shown. "If the identification by the witness has an independent origin, it is not reversible error that the procedure used may have been somewhat suggestive. [Cit.]" *Cook v. State*, 176 Ga. App. 335, 336 (1) (335 SE2d 706) (1985). In court, Fowler testified she recognized Edwards from seeing him with Rawls at the motel counter. Contrary to Edwards' claim, we do not find that the use of the driver's license during the police initial investigation led to a "very substantial likelihood" of incorrectly identifying Edwards in an "irreparable fashion." Moreover, any possible error in the admission of this witness' identification would be harmless in light of Edwards' identification by Bishop and other officers, as being a passenger with Rawls at the time of arrest.

5. Edwards claims the trial court abused its discretion by allowing Bishop to be recalled to the stand on two different occasions.

Contrary to Edwards' allegation, the transcript indicates Bishop was recalled on only one occasion. After the State completed its initial direct examination of Bishop, the State excused him subject to recall.

Relying on *Smith v. State*, 156 Ga. App. 563 (275 SE2d 140) (1980), Edwards claims the trial court erred by allowing the State to reopen the evidence to permit Bishop to testify as to a small segment of the videotape concerning the special tool used to remove the backseat. Edwards argues Bishop's testimony created the risk of prejudice condemned in *Smith*, supra. However, " '[r]eopening evidence is in the sound discretion of the trial court and will not be disturbed when no abuse of discretion is shown.' [Cits.]" Id. at 564. In this case, Edwards failed to show an abuse of discretion.

6. Edwards contends his case was improperly transferred over his objection from Judge Gault to Judge Roach pursuant to a local rule in Cherokee County that deviates from Uniform Superior Court Rule ("USCR") 3.2.

Edwards maintains that USCR 3.2 was not complied with because the case originated with Judge Gault and a different judge, Judge Roach, presided at the suppression hearing. Edwards claims that the local rule in the Blue Ridge Judicial Circuit wherein cases

are not assigned to a specific judge and the sitting judge on a scheduled non-jury day hears any motions set down for that day is violative of his due process rights. We find no merit to this argument. "[I]n non-metropolitan areas, where the circuit's judges preside over cases in several counties on different dates . . . it is often unfeasible and unwise for reasons of judicial economy for a single judge to preside over all hearings in a single case." *Robenolt v. Chrysler Financial Svcs. Corp.*, 201 Ga. App. 168, 170 (3) (410 SE2d 365) (1991).

Edwards also argues the district attorney, as an interested party, wanted the case heard by Judge Roach. Edwards claims Judge Gault had previously determined that a key State witness, Bishop, had no credibility. However, in both cases upon which Edwards relies, Judge Gault's granting of the defendant's motion to suppress was subjected to appellate review. See *State v. Slater*, 207 Ga. App. 669 (428 SE2d 676) (1993); *State v. Tate*, 208 Ga. App. 117 (430 SE2d 9) (1993); *Tate v. State*, 264 Ga. 53 (440 SE2d 646) (1994); *State v. Tate*, 213 Ga. App. 153 (445 SE2d 576) (1994). Moreover, the record indicates that rather than there being a violation of Edwards' due process rights by the State, it was Edwards' attorney who was attempting to "judge shop" as the trial court noted on the record.

Edwards further contends that the Blue Ridge Circuit failed to file its local rule with the Supreme Court as required by USCR 1.2. Although the State concedes the rule was not properly filed, Edwards has not shown that the failure was harmful. Errors do not actualize themselves into harm, and where there is no harm, we should find none. Accordingly, we find no merit to this enumeration.

7. Edwards claims the court committed reversible error by admitting into evidence cocaine that was not proven to be a mixture of ten percent or more. He argues the admission of the 11 kilos was improper, prejudicial and grounds for reversal.

The State tendered the cocaine evidence in three exhibits, only one of which had been analyzed for purity, the other two having only been tested to determine they were cocaine. A State crime lab chemist testified that package 3-B containing 1,002.3 grams was over ten percent pure. The failure to analyze the purity of all three exhibits would go to the weight of the evidence, not its admissibility. See *Dorsey v. State*, 187 Ga. App. 725 (5) (371 SE2d 207) (1988). Importantly, the State proved package 3-B contained over 400 grams of cocaine, consisting of more than ten percent purity, an amount more than sufficient to support a conviction for trafficking in cocaine, under OCGA § 16-13-31 (a) (1) (C).

8. Edwards argues that Bishop's testimony that the street value of the seized cocaine was worth between $5,000,000 and $9,200,000 was improper, irrelevant, inflammatory and prejudicial. However, at trial, he objected only to the relevance of the testimony, and we do

not consider grounds for objection not raised in the trial court. *Lewis v. State*, 205 Ga. App. 29 (421 SE2d 339) (1992). The only ground preserved for appeal is the relevance of the street value testimony.

The evidence of street value is probative in the sense that it may have explained Edwards' extreme nervousness when Bishop first stopped the vehicle, and allowed the jury to decide how plausible it would be for someone other than Edwards to have concealed cocaine worth millions of dollars behind the rear seat of Edwards' car without his knowledge. See *Scott v. State*, 170 Ga. App. 409, 411 (3) (317 SE2d 282) (1984) (holding that where defendant denied knowledge of the cocaine in his bag, it was not error to allow testimony of its street and wholesale value). Thus, this enumeration has no merit.

9. Edwards claims the State failed to prove the chain of custody of the cocaine evidence. Edwards tried to show the cocaine was not accounted for while the State's chemist was on vacation, but the chemist testified that only she and her supervisor had keys to the locker where the evidence was kept. Edwards has offered no evidence of tampering or substitution, and every person who had custody of the cocaine, after it was seized, testified. The court found the evidence was secured and the chain of custody established. See *Mosely v. State*, 217 Ga. App. 507 (458 SE2d 165) (1995) and *Quinn v. State*, 209 Ga. App. 480 (433 SE2d 592) (1993). Accordingly, we find no merit to this enumeration.

*Judgment affirmed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED NOVEMBER 30, 1995.

*Richard A. Coleman*, for appellant.

*Garry T. Moss, District Attorney, Cecelia Harris, Assistant District Attorney*, for appellee.