## S98A1444. LUMPKIN v. JOHNSON et al.
### (509 SE2d 621)

CARLEY, Justice.

After the grand jury of Richmond County indicted William Lumpkin for murder, a related civil action was filed against him in Columbia County. The criminal case was assigned to a trial judge by the Chief Judge of the Augusta Judicial Circuit, acting pursuant to a discretionary procedure adopted by a majority of the superior court judges of that circuit. Lumpkin filed suit, seeking writs of mandamus and prohibition to compel the clerks of the respective superior courts to appoint the same judge to preside over both the criminal and civil cases. In seeking the issuance of these extraordinary legal remedies, Lumpkin relied upon Rules 3.1 and 3.2 of the Uniform Superior Court Rules (Rules) which provide, in relevant part, that,

> [i]n multi-judge circuits, unless a majority of the judges in a circuit elect to adopt a different system, all actions, civil and criminal, shall be assigned by the clerk of each superior court according to a plan approved by such judges to the end that each judge is allocated an equal number of cases. . . . When practical, all actions involving substantially the same parties, or substantially the same subject matter, or substantially the same factual issues, whether pending simultaneously or not, shall be assigned to the same judge.

The trial court, sitting by designation, found no merit in Lumpkin's claim and dismissed his petition. From that order, Lumpkin brings this appeal.

1. At the outset, we note that Rule 3.1 does not authorize the clerk to establish a method of case assignment for a multi-judge circuit. Under that Rule, the clerk has only the administrative responsibility of implementing the method of allocating cases adopted by a majority of the judges in the circuit. Moreover, it is clear that the judges themselves are not required to approve a method which results in the equal assignment of cases, since Rule 3.1 specifies that a majority of the judges in a multi-judge circuit can adopt an entirely "different" system. Under that Rule, "a case-assignment system in

multi-judge circuits whereunder each judge is allocated an equal number of cases, is subject to the approval or modification of a majority of the judges in the circuit. [Cit.]" *Cobb County v. Campbell*, 256 Ga. 519, 520 (350 SE2d 466) (1986). Here, a majority of the judges has elected to adopt such a different system, whereby the Chief Judge, rather than the clerk, assigns capital cases on a basis which does not result in an equal allocation of such cases among them. The issue for resolution is whether this method of case assignment adopted in the Augusta Judicial Circuit was properly used to assign a judge to preside over the murder case against Lumpkin.

According to Lumpkin, the case assignment procedure followed by the judges is invalid for lack of prior approval by this Court. He relies upon Rule 1.2 (B), which specifies that such rules of a superior court as deviate from the Rules must first be filed with the clerk of this Court and will not take effect until 30 days after our approval. However, there is no Rule from which the case assignment method adopted by the judges deviates in any substantive manner. Indeed, Rule 3.1 specifically authorizes the judges to make their own determination as to the applicable case assignment method for the Augusta Judicial Circuit, and that Rule imposes no condition of prior approval by this Court. Therefore, the procedure adopted by the Judges is entirely consistent with the mandate of Rule 3.1. *Cobb County v. Campbell*, supra.

Moreover, by letter unanimously approved by this Court and entered on its minutes on December 16, 1997, this Court recognized that the case assignment method used in the Augusta Judicial Circuit is not a substantive matter controlled by the Rules, but is, instead, an internal operating procedure which does not require our prior approval. This action of the Court was based on Rule 1.2 (C), which provides that rules of a superior court which relate only to its internal procedure and do not affect the rights of any party, substantially or materially, require no prior approval by this Court. That Rule further defines such internal operating procedures as those which "relate to case management, administration, and operation of the court . . . ." This general definition of internal operating procedure clearly incorporates the method of assignment of cases adopted by a majority of the judges. See *Cobb County v. Campbell*, supra.

The only applicable requirement is stated in Rules 1.2 (G) and 3.4, which provide that the rules establishing the method of case assignment for a circuit must be published to the local bar, and be filed with the respective clerks and this Court. Because the assignment method adopted by the judges was not on file with this Court at the time the murder case was assigned, there has not been full compliance with the procedural requirements of Rules 1.2 (G) and 3.4. However, Lumpkin has not shown that the lack of prior filing with

this Court constitutes harmful error. See *Edwards v. State*, 219 Ga. App. 239, 246 (6) (464 SE2d 851) (1995). Giving retroactive effect to that unfiled assignment method will not deprive Lumpkin of any vested right, since he has no right at all to have his murder case assigned in accordance with any particular procedure. The judges, in their capacity as members of the judiciary, have the inherent authority to determine their own internal operating procedure for the selection of which of them shall hear cases in the Augusta Judicial Circuit. *Cobb County v. Campbell*, supra. Of course, the trial judge who is selected in accordance with the procedure adopted by the Judges must comport with the Due Process Clause guarantee of fairness and impartiality. *Ward v. Village of Monroeville*, 409 U. S. 57, 62 (93 SC 80, 34 LE2d 267) (1972). However, that constitutional right is fully protected by the post-assignment procedure available to Lumpkin for seeking the recusal or disqualification of any trial judge assigned to preside over the murder case if he wishes to question the fairness and impartiality of the assigned judge. Rule 25. Thus, the trial court correctly held that there was no basis for the issuance of writs of mandamus or prohibition in connection with the method used to assign the murder case against him.

Clearly, nothing in *Tokars v. Superior Court of Cobb County*, 264 Ga. 180, 181 (442 SE2d 454) (1994) holds that, in order for a case assignment system to comply with Rule 3.1, it *must ensure* an equal allocation of cases in a multi-judge circuit. The method of case assignment employed in *Tokars* was in conformity with the general mandate of Rule 3.1 that, "unless a majority of the judges in a circuit elect to adopt a different system," cases are to be allocated equally. In direct contrast, the method at issue here is in accordance with that express exception to the general mandate of Rule 3.1. As we held in *Cobb County v. Campbell*, supra at 520, Rule 3.1 specifically authorizes a majority of the judges to adopt a method which does *not* allocate an equal number of cases to each judge. Although Rule 3.1 provides that "all persons are directed to refrain from attempting to affect such assignment in any way," a Chief Judge who makes assignments in accordance with a method specifically approved by a majority of the other judges is clearly not such a "person." See *Cobb County v. Campbell*, supra at 520. The Chief Judge is acting in an official, not a personal, capacity when making case assignments pursuant to an approved system.

Art. VI, Sec. I, Par. V of the Georgia Constitution does not require a random and equal distribution of cases among the judges of a multi-judge circuit. That constitutional provision merely "requires certain uniformity among 'courts.' The term 'court' refers to the entire court, and not to the judge or judges of the court. [Cit.]" *Cobb County v. Campbell*, supra at 520. Thus, the case assignment method

in effect in the Augusta Judicial Circuit is constitutional because it "is such as could be adopted by each local court under its inherent power to control its own internal administration to promote flexibility and efficiency, subject only to limitations of uniform rules, statute, or the Constitution." *Cobb County v. Campbell*, supra at 520.

Likewise, Rule 1.2 has no bearing here, since it relates to this Court's prior approval of rules which deviate from the Rules. The method of case allocation in the Augusta Circuit does not deviate from any Rule. To the contrary, that method complies in all substantive respects with the Rules, in that it has been approved by a majority of the judges in the Augusta Judicial Circuit as specifically authorized by Rule 3.1. Indeed, that method was submitted to this Court pursuant to Rule 1.2 and, because it clearly was an internal operating procedure not governed by the Rules, this Court unanimously found that our prior approval under Rule 1.2 was unnecessary.

2. Rule 3.2 is not mandatory "inasmuch as that rule provides that companion cases should be assigned to the same trial judge only 'when practical.'" *Tokars v. Superior Court of Cobb County*, supra at 181. Therefore, mandamus will not lie to control or direct the exercise of the discretionary authority under Rule 3.2 to assign a case to a specific trial judge. See *Richmond County v. Steed*, 150 Ga. 229, 232 (1) (103 SE 253) (1920).

*Judgment affirmed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Sears, J., who dissent.*

SEARS, Justice, dissenting.

For the reasons explained below, I believe that the system under which appellant's death penalty prosecution was assigned to a particular judge of the Augusta Judicial Circuit is both at odds with the Uniform Superior Court Rules and fundamentally flawed as a matter of public policy. Accordingly, I would not allow it to stand. I also believe that, pursuant to the clear dictates of Uniform Superior Court Rule 3.2, the trial court was required to assign the same superior court judge to preside over appellant's civil and criminal trials. Therefore, I respectfully dissent.

On September 13, 1996, appellant was indicted on murder charges. Shortly thereafter, the State announced its intention to seek the death penalty. When the indictment against appellant was returned and filed, the case was not assigned by the Augusta Judicial Circuit ("Augusta Circuit") court clerk to a superior court judge, as required by Uniform Superior Court Rule ("USCR") 3.1. In fact, it was more than one year after the indictment was returned, on October 8, 1997, that the Chief Judge of the Augusta Circuit assigned the judge of that Circuit's Fourth Division to preside over appellant's

criminal trial. That assignment was made pursuant to the Augusta Circuit's Local Rule 2 (c).

On March 10, 1997, a civil action was filed against appellant, which was based upon the criminal indictment already pending against him. Appellant subsequently filed an action for writs of mandamus and prohibition, and sought to have the clerk of the Augusta Circuit be compelled to appoint the same judge to preside over both the civil and criminal trials. Appellant's request was based upon Uniform Superior Court Rule 3.2, which provides that, "When practical, all actions involving substantially the same parties, or substantially the same subject matter, or substantially the same factual issues, whether pending simultaneously or not, shall be assigned to the same judge." In his motion, appellant attacked the validity of the Augusta Circuit's Local Rule 2 (c), under which his death penalty prosecution was assigned, as being an unauthorized deviation from the Uniform Superior Court Rules ("USCR"). Appellant appeals from the denial of his requested relief. At the time this appeal was filed in this Court, no judge had yet been assigned to preside over appellant's civil trial.

1. The Augusta Circuit is divided into seven separate divisions, with a different judge presiding over each division. Local Rule 2 (c) of the Augusta Circuit states that:

> In cases in which the State is seeking the death penalty, presiding Judges shall be assigned [by the Chief Judge] on a rotating basis among the Judges of the First, Second, Third, and Fourth Divisions; if the need arises, the Chief Judge may additionally assign such cases among the Judges of the Fifth, Sixth, and Seventh Divisions on a rotating basis. All such assignments shall be made by the Chief Judge, or his designee.

The evidence of record shows that the Augusta Circuit has been operating under its Local Rule 2 (c), or the equivalent thereof, since the early 1970s. However, in 1994, the USCR were revised to state that "all local rules of the Georgia superior courts shall expire effective December 31, 1994. . . . Only those [local] rules reapproved by the Supreme Court on or after [that date] shall remain in effect."[1] Hence, as of the end of 1994, the Augusta Circuit no longer was authorized to continue assigning capital prosecutions under its Local Rule 2 (c), unless it first submitted the local rule to this Court for approval. Despite the USCR's clear directive that the Augusta Circuit local rule expired in 1994, the Augusta Circuit continues to this

---

[1] USCR 1.1.

day to assign capital prosecutions under its local rule without having obtained this Court's authorization to do so.[2] Because this assignment system is in direct contravention to the USCR, it is invalid, as was the assignment of appellant's trial made thereunder.

2. Rule 3 of the USCR provides clear directives for the assignment of cases among judges in the various Georgia judicial circuits. Specifically, Rule 3.1 requires that:

> In multi-judge circuits [like the Augusta Circuit], unless a majority of the judges in a circuit elect to adopt a different system, all actions, civil and criminal, shall be assigned by the clerk of each superior court according to a plan approved by such judges to the end that each judge is allocated an equal number of cases. The clerk shall have no power or discretion in determining the judge to whom any case is assigned. . . . The assignment system is designed to prevent any person's choosing the judge to whom an action is to be assigned: all persons are directed to refrain from attempting to effect such assignment in any way.

Clearly, the Augusta Circuit's local rule governing the assignment of death penalty cases directly contravenes the method for assigning cases set forth in USCR 3.1. Unlike the USCR, the Augusta Circuit local rule authorizes the Chief Judge of the Circuit, not the clerk of the court, to assign capital prosecutions. Furthermore, the Augusta Circuit local rule takes no measures to ensure that each judge in the Circuit is assigned an equal number of death penalty cases. In fact, the local rule clearly states that only four of the seven judges in the Augusta Circuit will be authorized to preside over capital trials. This Court has previously held that in order for a death penalty assignment system to comply with Rule 3.1, it must ensure "the equal allocation of death penalty cases among the judicial resources of the county [or district]."[3] Clearly, the Augusta Circuit's method of assigning capital cases does not satisfy this requirement. Hence, it is invalid.

Equally troubling is the fact that the Augusta Circuit local rule could be misinterpreted by some as permitting the Chief Judge to exercise some discretion in determining to which judge a capital prosecution will be assigned, in direct violation of the USCR's provision that "all persons are directed to refrain from attempting to affect such assignment in any way." By creating a case assignment system that excludes almost half of the Augusta Circuit's judges from presid-

---

[2] See also discussion on 398-400, infra.

[3] *Tokars v. Superior Court of Cobb County*, 264 Ga. 180, 181 (442 SE2d 454) (1994).

ing over death penalty prosecutions, the Augusta Circuit's local rule substantially affects the selection of the judge to whom a death penalty case will be assigned, and thus violates this mandate.

Because it excludes a number of the Augusta Circuit's judges from presiding over death penalty cases, and because it is not altogether random, the Augusta Circuit local rule also might be misperceived as making the assignment of death penalty prosecutions susceptible to manipulation. Working together, USCR 3.1 and the Georgia Constitution[4] ensure the random selection of judges. Random selection is an invaluable tool in maintaining both unbiased and impartial courtrooms, and the public's confidence therein. To my mind, an assignment system in capital cases that is not random creates an undesirable impression that the system is susceptible to abuse — regardless of whether there is any actual evidence of improper conduct. Such an impression impugns the integrity of our criminal courts, and can only undermine the public's trust in our criminal justice system's ability to fairly conduct death penalty trials, which are the most solemn proceedings in our criminal justice system. Accordingly, even though I find no evidence of improper conduct in the assignment of this case, I believe that the system under which it was assigned is fundamentally flawed as a matter of public policy, and by its very nature raises the specter of potential impropriety. For these reasons, I would not allow the Augusta Circuit local rule to stand.

3. As noted above, USCR 3.1 does authorize the judges of multi-judge circuits such as the Augusta Circuit to adopt a different system for the assignment of cases. However, the freedom to adopt a different method for assigning cases should not be interpreted to authorize judicial circuits to disregard the USCR's directive that regardless of what assignment system is adopted and implemented, no person shall be allowed to influence the choice of the judge to whom a matter will be assigned. Because the Augusta Circuit's local rule could allow for manipulation of the system for assigning capital prosecutions, it exceeds USCR 3.1's limited authorization for the adoption of different assignment methods.

Furthermore, USCR 3.1 is subject to USCR 1.2, "Authority to Enact Rules Which Deviate From the Uniform Superior Court Rules," which states:

> Each superior court . . . may propose to make and amend rules which deviate from the [USCR] provided such propos-

---

[4] See Ga. Const. (1983), Art. VI, Sec. I, Par. V ("[T]he courts of each class shall have uniform jurisdiction, powers, rules of practice and procedure, and selection, qualifications, terms and discipline of judges.").

als are not inconsistent with the Georgia Civil Practice Act, general laws, [the USCR], or any directives of the Supreme Court of Georgia. Any such proposals shall be filed with the clerk of the Supreme Court; proposals so submitted shall take effect 30 days after approval by the Supreme Court. It is the intendment of these Rules that rules which deviate from the [USCR] be restricted in scope.

As admitted in the majority opinion, at the time that appellant's capital prosecution was assigned to the Augusta Circuit's Fourth Division, the Augusta Circuit had not submitted its local rule regarding the assignment of death penalty cases to this Court for approval. Hence, the only conclusion to be reached is that the Augusta Circuit's assignment of this case was made in contravention of the USCR, and was invalid. Contrary to the majority's assertion, this was harmful error, as it denied appellant the assignment of a judge to conduct his capital trial pursuant to a random method designed to ensure an unbiased and impartial tribunal, and free of susceptibility to manipulation or abuse.[5]

As noted in the majority opinion, after the assignment of appellant's case, the Augusta Circuit did submit its Local Rules, including Rule 2 (c), to this Court, pursuant to USCR 1.2. In December 1997, this Court issued a letter to the Augusta Circuit in response to its submission. That letter indicated that because the Augusta Circuit's local rules concerned "internal operating procedures," this Court's approval was not required. I do not believe that this Court's December 1997 letter should be accorded precedential value. The letter was merely a formal response to the Augusta Circuit's submission of its Local Rules, and it carries no weight in our decision here.[6]

Furthermore, Augusta Circuit Local Rule 2 (c), governing the assignment of capital prosecutions, cannot be an "internal operating procedure," and I respectfully believe this Court erred in its December 1997 letter by concluding otherwise. The USCR states that it does not govern the superior courts' "internal operating procedures."[7] Yet USCR 3 is entirely devoted to the "Assignment of Cases and Actions" in the superior courts. Clearly, then, the drafters of the Uniform Rules intended that the assignment of cases within multi-judge circuits be governed under the Rules — otherwise, they would have had no reason to devote an entire Rule to the case assignment pro-

---

[5] See discussion in Division 2, supra.

[6] Furthermore, at the time the December 1997 letter was issued, this Court was aware that the present matter would soon be before it on appeal, and may well have wished to forestall final analysis of the Augusta Circuit's local rules until the parties had been afforded ample opportunity to present their respective arguments.

[7] USCR 1.2 (c).

cess. Moreover, if, as the majority asserts, the assignment of cases is an "internal operating procedure," it would not be necessary for USCR 3.1 to grant multi-judge circuits permission to adopt a different method of case assignment than that prescribed in the USCR.[8]

For the reasons discussed in Divisions 1 through 3, supra, I believe that the trial court and the majority opinion have incorrectly rejected appellant's challenge to the Augusta Circuit's Local Rule 2 (c).

4. The trial court erred in denying appellant's request for mandamus relief compelling that the same judge be appointed to preside over the related criminal and civil actions pending against him, and the majority has erroneously affirmed that denial. USCR 3.2 states that:

> *When practical,* all actions involving substantially the same parties, or substantially the same subject matter, or substantially the same factual issues, whether pending simultaneously or not, *shall* be assigned to the same judge.

(Emphasis supplied.) The majority concludes that the phrase "when practical," found at the Rule's beginning, should be construed to give the trial courts total discretion to decide when related matters will be assigned to the same judge.[9] I believe that conclusion is incorrect. Construing the first phrase of the Rule, "when practical," as discretionary is incompatible with the last phrase's use of the mandatory word *"shall."* Whenever possible, of course, rules should be construed to be harmonious and compatible in all respects.[10] Accordingly, the word "practical" should be construed according to its commonly accepted meaning,[11] which is "available or useful in practice,"[12] and Rule 3.2 should be construed in its entirety to mean that whenever available or useful, related cases that come within the ambit of the Rule *"shall"* be assigned to the same judge. Notably, unlike Rule 3.1, Rule 3.2 does not specifically state that the superior courts are free to adopt a different method of assigning related cases. Because this Rule places an affirmative obligation on the Augusta Circuit, it is incumbent upon the Circuit to establish it is exempt from the Rule,

---

[8] In support of its conclusion that the Augusta Circuit's Local Rule for the assignment of cases is an "internal operating procedure," the majority relies upon this Court's decision in *Cobb County v. Campbell,* 256 Ga. 519, 520 (350 SE2d 466) (1986). That reliance, however is misplaced, as the *Campbell* decision addressed only the *constitutionality* of a non-uniform case assignment method, and specifically recognized that the case-assignment system at issue in that case was "subject . . . to limitations of [the] uniform rules." 256 Ga. at 520.

[9] Op. at 395.

[10] See OCGA § 1-3-1.

[11] Id.

[12] New Shorter Oxford English Dictionary, Vol. 2, p. 2317 (1993).

because assigning the two related cases to the same judge would not be "practical."[13] In this case, the Augusta Circuit has not made that showing. Accordingly, it being undisputed that the criminal and civil actions pending against appellant come within the scope of Rule 3.2, it was incumbent upon the trial court to grant the requested mandamus relief.

In sum, I believe (1) that the system under which appellant's capital prosecution was assigned to the judge of the Augusta Circuit's Fourth Division is at odds with Uniform Superior Court Rules, and is fundamentally flawed, and (2) that the court clerk was obligated under Uniform Superior Court Rule 3.2 to assign the same judge to preside over the two related cases pending against appellant. For those reasons, I respectfully dissent.

I am authorized to state that Chief Justice Benham and Presiding Justice Fletcher join in this dissent.

DECIDED DECEMBER 4, 1998 —
RECONSIDERATION DENIED DECEMBER 18, 1998.

*Jackson & Schiavone, G. Terry Jackson, Michael Mears, Gerard B. Kleinrock,* for appellant.

*Thurbert E. Baker, Attorney General, John C. Jones, Senior Assistant Attorney General, Diane F. LaRoss, Assistant Attorney General, Burnside, Wall, Daniel, Ellison & Revell, James B. Wall, James W. Ellison,* for appellees.

[13] See *Barlow v. Story,* 120 Ga. App. 48 (169 SE2d 660) (1969) (party must clearly establish basis for claiming exemption from statute or rule). See also *Phoebe Putney Mem. Hosp. v. Roach,* 267 Ga. 619 (480 SE2d 595) (1997).