## 75022. TARWID et al. v. THE STATE.

(363 SE2d 63)

POPE, Judge.

Appellants John and Robert Tarwid bring this appeal from their convictions and sentences of trafficking in cocaine. *Held*:

1. Appellants first contend that the trial court erred in denying their motions to suppress, which were based on the alleged illegality of the stop, detention and subsequent search of the automobile in which they were traveling. The evidence adduced at the suppression hearing showed the following: Sometime after midnight on October 30, 1986 Officer Claude Johnson of the Catoosa County Sheriff's Department received a radio transmission from Georgia State Trooper M. S. Ralston "[t]hat he [Ralston] had made a traffic stop on [the vehicle in which appellants were traveling] in another county [on I-75]. . . . And that he had given the driver [John Tarwid] a warning citation for speeding, that the vehicle and the people in the vehicle had shown signs of trafficking [in drugs]. . . ." Although Trooper Ralston provided no specifics as to the basis of his belief that the occupants of the car were trafficking in drugs, he did provide a description of the car and its tag number (Illinois plates), stated that he believed the car to be a rental and that his request for consent to search the car had been refused.

Officer Johnson subsequently spotted and proceeded to follow a vehicle matching the description given by Trooper Ralston. After following the car for approximately one mile, Officer Johnson turned on his blue light and, according to his testimony, the driver immediately shouldered the car and stopped. Officer Johnson further testified that he decided to stop appellants based on "[j]ust his manner of speed, wasn't driving very fast, that's an indication at that time of the morning, somebody may be going home drinking or driving the vehicle drunk." Officer Johnson estimated appellants' speed at 45-50 mph and stated that the traffic generally was moving at 60-65 mph. Officer Johnson also testified that at the time of the stop appellants were not committing any traffic violations. Officer Johnson subsequently stated that the stop was based both on appellants' low rate of speed and the information received from Officer Ralston.

After appellants stopped, Officer Johnson approached the car and asked for appellant John Tarwid's driver's license, which he immediately produced. Officer Johnson further testified that he quickly surmised that appellants were not intoxicated; nevertheless, he took the driver's license back to his patrol car to run a check on it. He subsequently asked for and received the car rental agreement and radioed in a check on that document also. While waiting to receive the information on the license and agreement, he asked appellants' consent to search the car. When they refused, he informed them "that

I may be calling for a dog" and "that if . . . circumstances warranted it, . . . we would obtain a search warrant." Officer Johnson also testified that two other law enforcement officers, each traveling in a separate car, arrived on the scene shortly after he stopped appellants.

Officer Johnson then returned to his car to receive the information being transmitted to him on the document checks; however, before he could receive that information, one of the other officers on the scene approached his car and informed him that verbal consent to search the car had been obtained. A written consent to search was also obtained. The search of the car yielded 4 packages containing approximately nine pounds of cocaine.

We first consider appellants' arguments concerning the legality of the stop of their vehicle by Officer Johnson. "Although an officer may conduct a brief investigative stop of a vehicle, see *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979), such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 1883, 20 LE2d 889, 909) (1968); *United States v. Brignoni-Ponce*, 422 U. S. 873 (95 SC 2574, 45 LE2d 607) (1975). Investigative stops of vehicles are analogous to *Terry*-stops, *Terry*, supra, and are invalid if based upon only unparticularized suspicion or hunch, 392 U. S. at 27 (88 SC at 1883, 20 LE2d at 909). *United States v. Smith*, 799 F2d 704, 707 (11th Cir. 1986). An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. (Cits.) *United States v. Cortez*, 449 U. S. 411, 417 (101 SC 690, 66 LE2d 621) (1981)." (Punctuation omitted.) *Evans v. State*, 183 Ga. App. 436, 438 (359 SE2d 174) (1987).

We first consider whether Officer Johnson's suspicion that appellant John Tarwid was driving under the influence constitutes the necessary basis for the stop in the present case. In this regard, we find the court's analysis in *United States v. Smith*, 799 F2d 704, supra, to be particularly instructive. In *Smith*, in addition to Trooper Vogel's testimony that he stopped appellants, who were subsequently convicted of possession of cocaine with intent to distribute, on the basis of the drug courier profile, there was also evidence that appellants were weaving prior to the stop. In addressing the issue of whether Officer Vogel could have conducted a *Terry*-stop to investigate the possibility of drunk driving, the court stated that "in determining when an investigatory stop is unreasonably pretextual, the proper inquiry . . . is not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose." Id. at 709.

Applying this analysis to the present case, we are forced to conclude that the stop here was similarly pretextual. First, we note that

by Officer Johnson's own account appellants were traveling only slightly under the posted maximum speed limit. And, although he also testified that traffic in general was traveling in excess of that limit, those persons, unlike appellants, presumably had not just received a warning citation for speeding. It is reasonable to conclude that a driver would slow down after receiving a warning citation for speeding, even if other cars were traveling at a faster rate of speed. It is also important to note Officer Johnson knew that appellants had just received a warning citation from Trooper Ralston. Moreover, it strains credulity to suggest that Officer Ralston would have released appellants with only a warning citation for speeding had he suspected the driver was intoxicated or that he would not have mentioned that fact in his radio transmission. Lastly, Officer Johnson testified that although he quickly concluded that his suspicions were unfounded, he continued to detain appellants in order to conduct a license check and to verify the car rental agreement. Again, however, Trooper Ralston would presumably not issue a traffic citation, albeit only a warning, without also verifying this information. Thus, under the circumstances present here, a reasonable officer would not have concluded that appellants were intoxicated solely because they were traveling slightly under the posted maximum limit, and, absent an illegal motivation, would not have continued to detain appellants from ascertaining that they were not, in fact, driving under the influence.

"By looking to what a reasonable officer *would* do rather than to what an officer validly *could* do, the standard we apply today to determine the validity of an allegedly pretextual investigative stop is supportive of the rationales that make *Terry*-stops reasonable under the [F]ourth [A]mendment. *Terry*-stops are reasonable not only because of the government's interest in investigating and alleviating officers' suspicions of illegal activity but also because of the limited intrusiveness of such stops. 392 U. S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908-09. To maintain this balance between the competing interests of the government and the individual, each *Terry*-stop must be both 'justified at its inception' and 'reasonably related in scope to the circumstances which justified the interference in the first place.' *Terry*, 392 U. S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905 . . . If officers were permitted to conduct *Terry*-stops based on what conceivably could give rise to reasonable suspicion of minor violations, the necessary connection between a seizure's justification and its scope would inevitably unravel." *Smith*, supra at 711.

We must also consider, however, whether the present stop can be justified based on Trooper Ralston's radio communication that appellants showed "signs" of trafficking in drugs. In this regard, appellants concede that a reasonable suspicion may exist based on the collective knowledge of law enforcement officials. *United States v. Allison*, 616

F2d 779 (5th Cir. 1980). However, this does not obviate the requirement that evidence of articulable and specific facts must be presented to justify a *Terry*-stop. In the present case the only evidence presented at the suppression hearing was Officer Johnson's testimony concerning Trooper Ralston's radio transmission that appellant had shown "signs" of trafficking. Trooper Ralston did not testify, and Officer Johnson testified that he was unfamiliar with the drug courier profile. The only evidence we have of Trooper Ralston's "signs" is what can be surmised from his conduct during the initial stop of appellants. Since these signs were apparently insufficient to justify appellants' continued detention or to constitute probable cause to search appellants' vehicle without their consent, it appears to us that Trooper Ralston's "signs" were nothing more than "inarticulate hunches" and thus insufficient to justify a seizure under the Fourth Amendment. "That Trooper [Ralston's] 'hunch' about the appellants proved correct is perhaps a tribute to his policeman's intuition, but it is not sufficient to justify, ex post facto, a seizure that was not objectively reasonable at its inception. [Cits.] Because [the record contains no evidence that Ralston had] a reasonable suspicion that the appellants were hauling drugs, the stop cannot be upheld on that ground." (Indention omitted.) *Smith*, supra at 708.

Pretermitting the issue of whether appellants' consent to search was in fact voluntary, we also find that such consent was tainted by the illegal stop and detention and thus decline to uphold the subsequent search and seizure on that basis. See, e.g., *Florida v. Royer*, 460 U. S. 491 (103 SC 1319, 75 LE2d 229) (1983); *United States v. Thompson*, 712 F2d 1356 (11th Cir. 1983).

2. Because of our holding in Division 1, supra, it is unnecessary for us to consider appellants' remaining enumerations.

*Judgment reversed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED NOVEMBER 16, 1987.

*John O. Wiggins, Julius Echeles*, for appellants.
*David L. Lomenick, Jr., District Attorney, James D. Franklin, Assistant District Attorney*, for appellee.