76439. BROWN v. THE STATE.
(372 SE2d 574)

McMurray, Presiding Judge.

Defendant was charged by indictment with trafficking in cocaine and improper lane usage. Following his conviction of trafficking in cocaine (and acquittal on the traffic charge), defendant appeals. *Held*:

Defendant's sole enumeration of error raises the denial of his motion to suppress evidence. The relevant facts as determined by the trial court and set forth in its "findings of fact" show that: "The felony charge of Trafficking in Cocaine arises from a search and seizure of alleged contraband contained in an automobile on the 8th day of October, 1986. The search and seizure was conducted by Deputy Sheriff Howell of the Whitfield County Sheriff's Department.

"During 1986, the Georgia State Patrol began 'Operation Nighthawk' which is an interstate highway drug interdiction effort. Officers assigned to local patrol posts were given training in April of 1986

sponsored by the Federal Drug Enforcement Agency ["DEA"].

"The DEA training included circumstances or characteristics to watch for when officers are making traffic stops, loosely referred to as a drug courier 'profile.' Among the characteristics is out-of-state cars traveling north on the interstate, particularly automobiles with Florida license plates traveling north, and even more particularly, automobiles with Florida license plates which indicate a rental vehicle.

"After that training, the state troopers began making more stops of cars fitting the 'profile' and finding large amounts of cocaine and other drugs.

"Simply stated, 'Operation Nighthawk' adopted by the Georgia State Patrol utilizes officers with traffic violation duties to identify offenders and through traffic violations, consents to search, and other means to develop legal opportunities to arrest drug couriers and seize contraband.

"Deputy Howell became aware of this activity and attended part of a local training session conducted by one of the state troopers and began to copy or imitate the state troopers and use the 'profile.'

"Deputy Howell was assigned to the Sheriff's DUI [Driving Under the Influence] Task Force and his duties dealt with the enforcement of traffic laws and particularly DUI offenses. Part of his normal patrol area included the interstate highway in Whitfield County.

"Because of his awareness of the drug courier arrests and training, he began watching for vehicles described in the 'profile' and if a traffic violation was observed, to stop the vehicle and try to develop a legal opportunity to search for and seize illegal drugs.

"On the occasion in question here, Officer Howell's attention was drawn to the defendants' vehicle because of observed characteristics contained in the 'profile,' i.e., Florida license plate indicating a rental car. Officer Howell began following the vehicle. No traffic violations were observed for some distance.

"While following, the defendants' vehicle made a quick lane change and crossed the fog line on the right side of the roadway separating the traffic lane from the emergency lane with the right front and rear tires.

"Deputy Howell then activated his blue light and stopped the suspect vehicle. The quick lane change was made because the driver noticed the law enforcement vehicle behind him and was moving to the right to get out of the way. Defendant Brown would not have made the lane change if the officer had not been behind him.

"The Defendant Brown exited the suspect vehicle and gave the officer his driver's license. Deputy Howell asked if it was a rental vehicle and Defendant Brown gave an affirmative response. Deputy Howell asked for the registration or rental agreement. During this

time, the passenger, Susan Headrick, remained in the vehicle. When Defendant Brown went back to the vehicle to obtain the rental agreement, Officer Howell got closer to the vehicle and noticed Kleenex in the vehicle. The rental agreement appeared in order.

"Deputy Howell became more suspicious because of Defendant Brown's appearance. He did not fit a new Buick Riveria, but rather looked more like a motorcyclist.

"Defendant Brown talked very little and did not appear mad about being stopped. The officer thought this was unusual.

"The deputy handed the rental agreement and the driver's license back to Defendant Brown. At this point no ticket or warning ticket was issued. He was not under arrest or any restraint at this point.

"Deputy Howell then asked for permission to search the vehicle, that they had had trouble with cars like his carrying contraband. Defendant Brown immediately said yes without any additional questions or hesitancy. The deputy went back to his car for the written consent to search form . . . and called for back-up. Deputy Howell went over the form with Defendant Brown on the hood of the patrol car. No other officers or law enforcement vehicles were present. Deputy Howell proceeded to fill out the form using what he observed and what the Defendant told him and then read the form out loud as the defendant, standing beside him, read the form. Defendant Brown indicated he understood the form, consented to the search, and signed the form.

"Another officer came to the scene, signed the form as a witness; the passenger . . . was asked to step from the vehicle, and the search was conducted by Officer Howell. . . .

"While searching . . . the trunk . . . [Deputy Howell] seized the suspected cocaine. . . .

"The consent to search given by Defendant Brown was freely and voluntarily given to the Deputy Sheriff. Without the consent, there was no probable cause to search the vehicle with or without a warrant." (Paragraph numbering omitted.)

" 'Although an officer may conduct a brief investigative stop of a vehicle, see *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979), such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 1883, 20 LE2d 889, 909) (1968); *United States v. Brignoni-Ponce*, 422 U. S. 873 (95 SC 2574, 45 LE2d 607) (1975). Investigative stops of vehicles are analogous to *Terry*-stops, *Terry*, supra, and are invalid if based upon only unparticularized suspicion or hunch, 392 U. S. at 27 (88 SC at 1883, 20 LE2d at 909). *United States v. Smith*, 799 F2d 704, 707 (11th Cir. 1986). An investigatory stop must be justified by some objective man-

ifestation that the person stopped is, or is about to be, engaged in criminal activity. (Cits.) *United States v. Cortez,* 449 U. S. 411, 417 (101 SC 690, 66 LE2d 621) (1981).' (Punctuation omitted.) *Evans v. State,* 183 Ga. App. 436, 438 (359 SE2d 174) (1987). . . .

" '[I]n determining when an investigatory stop is unreasonably pretextual, the proper inquiry . . . is not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose.' [*United States v. Smith,* 799 F2d 704, 709 (11th Cir. 1986)]" *Tarwid v. State,* 184 Ga. App. 853, 854 (363 SE2d 63). In the case sub judice, the trial court concluded that: "The stop of the vehicle was made because of the quick lane change which would not have occurred except for the deputy's surveillance of the vehicle. Under those circumstances, the stop was pretextual."

While finding that the stop of defendant's vehicle was pretextual, the trial court concluded that the consent to search was freely and voluntarily given, and denied defendant's motion to suppress the evidence seized from defendant's automobile. However, in order to eliminate any taint from an involuntary seizure or arrest, there must be proof both that the consent was voluntary and that it was not the product of the illegal detention. Proof of a voluntary consent alone is not sufficient. The relevant factors include the temporal proximity of an illegal seizure and consent, intervening circumstances, and the purpose and flagrancy of the official misconduct. See *United States v. Miller,* 821 F2d 546 (11th Cir. 1987); *United States v. Smith,* 799 F2d 704, supra; *United States v. Thompson,* 712 F2d 1356 (11th Cir. 1983); *Tarwid v. State,* 184 Ga. App. 853, supra.

In the case sub judice, we find that there was no significant lapse of time between the unlawful detention and the consent, that no intervening circumstances dissipated the effect of the unlawful detention and that the deputy's conduct had no arguable legal basis. Therefore, we hold that the consent was the product of the illegal detention, and that the taint of the unreasonable stop was not sufficiently attenuated. The trial court erred in denying defendant's motion to suppress evidence. *Tarwid v. State,* 184 Ga. App. 853, supra.

*Judgment reversed. Pope and Benham, JJ., concur.*

DECIDED SEPTEMBER 6, 1988.

*Marcus R. Morris, Robert W. Ritchie,* for appellant.
*Jack O. Partain III, District Attorney, Kermit N. McManus, Assistant District Attorney,* for appellee.