## A92A1680. WEAVER v. THE STATE.
(430 SE2d 60)

BLACKBURN, Judge.

The defendant, Gene Weaver, was convicted by a jury of possession of marijuana, obstruction of an officer, and reckless driving. On appeal, the defendant asserts that the trial court erred in denying his motion to suppress.

At the hearing on the pretrial motions, Agent William Butler, Jr., a supervisor with the South Georgia Task Force, testified that at approximately 10:30 on the morning of October 22, 1991, he received a telephone call from an anonymous male informant, who advised that the defendant and an acquaintance had left the Needmore community in a 1970s model maroon Chevrolet Impala and had in their possession several pounds of marijuana. He further advised that the defendant would be going a particular route and would go to the

residence of one of them. Agent Butler, who had some familiarity with the defendant, failed to locate the men at any point on the designated route or at the residence of defendant Weaver on his first trip to such location. When Agent Butler later returned to defendant Weaver's residence he spotted the vehicle described by the anonymous informant. Less than 15 minutes later, Agent Butler observed the subject vehicle leave defendant Weaver's residence, but he did not see who entered the vehicle. Agent Butler, who had no knowledge of the identity of the occupants at that time, set out to stop defendant's vehicle.

As the defendant proceeded toward a stop sign, officers Butler and Spurlin approached the defendant's vehicle nearly head-on in their unmarked car, flashing lights and using the siren. At that time Agent Butler recognized the defendant. Defendant Weaver was the driver of the vehicle and when he saw Agent Butler, he quickly turned the vehicle around in the grass and fled at a high rate of speed. During the chase, Agent Butler saw the passenger door of the Impala open and close. The defendant continued driving at speeds in excess of 65 mph until he lost control of the vehicle, hit a telephone pole, and collided head-on with the agents' vehicle. Defendant Weaver again attempted to flee the scene by backing up the Impala, but the attempt was unsuccessful because the vehicles had become enmeshed as a result of the collision. He was subsequently arrested by the agent while the passenger fled on foot to the woods surrounding the area. After defendant Weaver's arrest, Agent Butler recovered a large green plastic bag of marijuana that had been seen on the driver's side floorboard. Marijuana was also found on defendant Weaver.

Defendant enumerates as error the trial court's denial of his motion to suppress based on a finding that the police had a reasonable suspicion to stop him, and further erred in concluding that the defendant's flight provided the officers with sufficient probable cause to search the vehicle.

" 'The Supreme Court of the United States has held that when a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person within the meaning of the Fourth Amendment. Terry v. Ohio, 392 U. S. 1, 16 (88 SC 1868, 20 LE2d 889) (1968). To justify a warrantless intrusion of this nature, the state must be able to point to specific and articulable facts, which, together with rational inferences drawn therefrom, reasonably warrant the intrusion. Terry v. Ohio, supra; [cits.].

'What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing. . . . "Where no circumstances at all appear which might give rise to an articulable suspicion (less than probable cause, but greater than mere

caprice) that the law has been violated, the act of following and detaining a vehicle and its occupants must be judged as an impermissible intrusion on the rights of the citizen." [Cit.]' " *State v. Holton*, 205 Ga. App. 434, 435-436 (1) (422 SE2d 295) (1992).

In *Alabama v. White*, 496 U. S. 325 (110 SC 2412, 110 LE2d 301), the U. S. Supreme Court upheld an investigatory stop where the tip provided by an anonymous caller was sufficiently detailed and was corroborated by the observations of the police. According to the Court, "What was important was the [anonymous telephone caller's] ability to predict [White's] future behavior, because it demonstrated inside information. . . . The general public would have had no way of knowing that [White] would shortly leave the building, get in the described car, and drive the most direct route to [the stated destination]. . . . [Cit.]" (Emphasis omitted.) *Alabama v. White*, supra at 332.

In the case sub judice the information provided to the agents and their follow-up would not have justified an investigatory stop of the defendant because it was not based upon an articulable suspicion. The telephone call from the anonymous informant, whose reliability could not be established by the officer, did not adequately predict the future behavior of the defendant and his acquaintance and was not sufficiently corroborated by the agents. On the contrary, the defendant was not found en route to his home as predicted by the informant, but was found at his home, a fact which is arguably obvious and known to the general public as to where the defendant would likely be found.

However, we find that the defendant's traffic violations, including driving at speeds in excess of 65 mph and his subsequent collision with a telephone pole as well as the vehicle driven by the agents, all of which occurred in the presence of the agents, were sufficient to authorize the agents to stop defendant's vehicle; indeed, they had a duty to do so. "An individual's flight upon seeing a police officer may be some evidence of guilt" and has been recently held by this court to provide officers with sufficient articulable suspicion to conduct a *Terry* "stop and frisk." *Harris v. State*, 205 Ga. App. 813, 814 (423 SE2d 723) (1992); see also *State v. Webb*, 193 Ga. App. 2, 3 (1) (386 SE2d 891) (1989). Further, " '[i]mmediately (after the investigatory stop,) the plain view doctrine came into effect' " and the officers were authorized to conduct a warrantless search and seizure of objects viewed and immediately seen as being incriminating, such as the marijuana observed on the floorboard on the driver's side of the defendant's vehicle. *Webb*, id. at 5. Therefore, the defendant's alternative argument is without merit.

We conclude that the defendant's flight as he was approached by the agents as well as his subsequent collision with the telephone pole

and the agents' vehicle authorized the officers to stop the defendant and investigate the collision. Accordingly, the trial court properly denied the defendant's motion to suppress.

*Judgment affirmed. McMurray, P. J., concurs. Cooper, J., concurs specially.*

COOPER, Judge, concurring specially.

I agree with the majority that the officers acted illegally when they initially blocked appellant's vehicle. I also agree that by the time the officers finally stopped appellant, the stop was legal because the officers had actually witnessed appellant breaking the law, and that the contraband was properly seized pursuant to the plain view doctrine. I write separately only to emphasize that an individual's flight — particularly when that flight is in response to illegal action on the part of police officers — cannot alone change an illegal stop into a legal one. *Harris v. State,* 205 Ga. App. 813 (1) (423 SE2d 723) (1992) does not hold otherwise, for in both *Harris* and *Green v. State,* 127 Ga. App. 713 (194 SE2d 678) (1972), on which the *Harris* decision relies, we noted the presence of other circumstances supporting an articulable suspicion or probable cause. Thus, in my opinion, appellant's flight transformed an illegal stop into a legal one in this case *only* because appellant broke the law in the course of his flight.

DECIDED MARCH 9, 1993 —
RECONSIDERATION DENIED MARCH 24, 1993 ▮▮▮▮▮▮▮

*Dodd & Turner, Roger J. Dodd,* for appellant.
*H. Lamar Cole, District Attorney, A. Scott Gunn, Assistant District Attorney,* for appellee.