A96A0460. THE STATE v. WRIGHT.
(470 SE2d 916)

BIRDSONG, Presiding Judge.

This is an appeal by the State of the order of the trial court granting appellee Russell P. Wright's motion to dismiss.

Appellee was issued a traffic citation for DUI. The trial court, citing *State v. Golden,* 210 Ga. App. 800 (437 SE2d 492), granted appellee's motion to dismiss on the grounds the arresting officers had no particularized suspicion to justify the initial stop of appellee who was driving his motor vehicle; rather, the court concluded the initial stop was conducted "merely to make sure that no criminal violations had taken place."

Investigator Lowry of the Houston County Sheriff's Department was in his patrol unit when he monitored a call from dispatch regarding a lookout placed on a vehicle which had been observed "cutting doughnuts behind a church." Dispatch provided the reported location and description of the vehicle and two uniformed officers in another patrol unit were sent to the church. As Lowry proceeded in his patrol unit toward his residence, a vehicle matching the description of the reported vehicle passed him. The vehicle was coming from and was approximately only 400 yards from the church. Lowry turned his unit around and was attempting to catch the subject vehicle when the other patrol unit caught up to Lowry. Lowry then observed the suspect vehicle definitely "weaving"; the vehicle "swung over" and made yet another turn. When the driver of the subject vehicle turned, "he made it so wide that he actually went off the right side of the road." Lowry advised the trailing patrol unit that he was going to attempt to stop the vehicle and then activated his blue light. The vehicle proceeded to an intersection and stopped. The officers in the trailing patrol car handled the ensuing investigative detention which culminated in appellee's DUI citation. When Lowry commenced to follow the vehicle, he did not suspect it was involved in any kind of criminal activity "other than it fit the general description of the lookout." Lowry did not personally investigate the incident and did not

issue any traffic citations.

The uniformed officers initially had been dispatched to the church after being informed by the dispatcher that a blue or green pickup truck with a cab cover was in the church's back parking lot "spinning doughnuts." The truck was not in the parking lot when they arrived at the scene; however, circular tracks were observed where the truck had been driving. The dispatched vehicle then received a call from Lowry stating that he was following a vehicle that matched the description of the vehicle in question and giving them his location. The dispatched vehicle caught up with Lowry and observed the subject vehicle "cross the center divider line approximately four times" and make "an erratic turn" or "erratically swerve" onto an adjoining road without using "a turn signal"; the vehicle "cut the curb because he ended up taking the other lane." The officers followed the vehicle, as it turned, and "decided to do our vehicle pullover at that time." The dispatched vehicle then activated its flasher lights and Lowry also activated his blue light. Appellee stopped and exited his vehicle, and investigative detention commenced. The apprehending officer asked if appellee knew why he was being stopped, and appellee responded he thought it was for the driving he was doing at the church.

When the apprehending officer was at the church, he believed a crime of "reckless driving had occurred" there; however, appellee was not charged with reckless driving or any other crime relating thereto. The apprehending officer did not issue appellee a ticket for reckless driving, because before he was *Mirandized* appellee admitted he had been driving at the church and the officer already had "probable cause for the DUI"; further, the officer did not see appellee driving at the church. The arresting officer also elected not to issue appellee a citation for failing to maintain his lane, for failing to signal a turn, or for making a wide turn, although the latter two incidents were recorded in his report. He did not issue a citation for these offenses because they were examples of incidents giving rise to probable cause for the DUI, and he saw no point in adding further charges to the DUI citation. The arresting officer's shift supervisor, who also was in the dispatched patrol unit, testified and basically confirmed the testimony of the arresting officer. He further testified that after catching up with Lowry he saw that the pursued vehicle was weaving. The vehicle was kept under observation and was observed weaving over the centerline a couple of more times and, when it turned without giving a signal, his unit then called in and "initiated the *traffic stop* at that time." (Emphasis supplied.) Appellee pulled his vehicle over in response to the units' flashing lights. The shift supervisor was concerned because appellee's driving conduct indicated he was under the influence of alcoholic beverages, could be having problems with his

steering, or might be in need of help. Appellee's driving conduct constituted technical violations of the uniform rules of the road. The investigation made at the church, before appellee was observed, revealed evidence that somebody had been there shortly before the officers and was driving in an unsafe manner in the parking lot. *Held*:

1. "This appeal does not involve a trial court's rulings on disputed facts and credibility at a suppression hearing, which must be accepted by a reviewing court unless clearly erroneous, [cit.], as the facts in the case sub judice were not in conflict. Rather, '(t)his court's responsibility in reviewing the trial court's decision on a motion to suppress is to ensure that there was a substantial basis for the decision. (Cit.)' [Cit.]" *State v. McFarland*, 201 Ga. App. 495 (411 SE2d 314).

2. The trial court's reliance on *Golden*, supra, is misplaced; *Golden* is distinguishable. In *Golden*, the vehicle was not observed committing traffic violations before the stop; it was stopped merely to confirm that no crime had been committed. Also distinguishable is *Jorgensen v. State*, 207 Ga. App. 545 (428 SE2d 440) where the officer detained defendant solely on his intuition that defendant had avoided a roadblock.

3. The suppression hearing testimony of the investigator and officers was not refuted. Appellee was stopped by the combined and simultaneous actions of Investigator Lowry and of the officers in the dispatched patrol unit.

" 'Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Investigative stops of vehicles are analogous to *Terry*-stops, (*Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968)), and are invalid if based upon only (an) unparticularized suspicion or hunch. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.' . . . [Cit.] This specific, articulable suspicion must be based on the totality of the circumstances — e.g., objective observations, information from police reports, the modes or patterns of certain kinds of lawbreakers, and the inferences drawn and deductions made by a trained law enforcement officer." *Cheatham v. State*, 204 Ga. App. 483, 484 (1) (419 SE2d 920). When the police activated their flasher lights and caused appellee's vehicle to stop, they unrefutedly were in possession of knowledge, gained from their individual personal observations, that appellee had committed at least two distinct traffic violations; specifically, both officers and the investigator had observed appellee repeatedly fail to maintain a single lane (weaving) (see generally *Ramirez v. State*, 192 Ga. App. 255 (384 SE2d 279);

OCGA § 40-6-48 (1)), and had observed him turn without giving a turn signal (OCGA § 40-6-123). Compare *Cunningham v. State*, 216 Ga. App. 283 (454 SE2d 176) and *Evans v. State*, 216 Ga. App. 21 (453 SE2d 100) (articulable suspicion where vehicle driving with defective headlight). At the moment when appellee was signaled to stop his vehicle, the officers and the investigator each harbored an articulable suspicion, based on personal observation, that appellee had committed multiple traffic violations. Because they all simultaneously assisted in the stop, we emphasize that the existence of an articulable suspicion may be "based on the collective knowledge of law enforcement officials." *Tarwid v. State*, 184 Ga. App. 853, 855 (363 SE2d 63). In this regard, any one of the apprehending officers "was entitled to rely on the information given him by a fellow officer" in the formation of an articulable suspicion. *Chumbley v. State*, 180 Ga. App. 603, 604 (349 SE2d 823).

Also, the arresting officer's supervisor had an articulable suspicion, based on the manner in which appellee operated his vehicle, that appellee was driving under the influence of alcohol, driving a vehicle with steering problems, or was in need of help. Any one of these conditions could pose a real and present danger to both appellee and the public. Compare *Cunningham*, supra at 284.

"The fact that the officer[s] did not charge defendant with [these observed traffic offenses] but only with the more serious offense of driving under the influence is immaterial" (*State v. Adams*, 186 Ga. App. 87, 88 (366 SE2d 326)); it was in the arresting officer's discretion which of the traffic offenses, if any, he would cite appellee for violating. Articulable suspicion is not negated nor is a traffic stop deemed to be a mere sham or pretext solely because an officer elects not to cite the defendant with any or all of his suspected traffic violations; failure to cite, at most, is but one factor among the totality of the circumstances to be considered in determining the legality of a traffic stop.

Additionally, the radio call received from dispatch by both police vehicles, apparently based on a concerned citizen's observation, provided a description of the suspect vehicle, the location of the incident, and a description of the type of driving reported. Almost simultaneously Investigator Lowry observed a departing vehicle approximately 400 yards from the parking lot which matched the vehicle "lookout" description. He called the patrol unit and informed them of his location and that he was following the vehicle. "Information which police transmit to one another, by any accepted means of communication, can provide 'sufficient grounds to create an articulable suspicion warranting reasonable cause to stop [appellee's vehicle].' [Cit.]" *Walton v. State*, 194 Ga. App. 490, 491 (2) (390 SE2d 896); see also *State v. Thomason*, 153 Ga. App. 345 (265 SE2d 312) (radio report to investi-

gate person slumped over steering wheel). Also, the officers dispatched to the church were in possession of tire-track evidence that provided an indicia of reliability for the concerned citizen's report. Compare *McFarland*, supra, with *Johnson v. State*, 197 Ga. App. 538 (398 SE2d 826). Based on information from the radio calls and their personal observation of the tire tracks, the officers in the patrol unit would have a basis for forming, prior to the stop, an articulable suspicion that the vehicle driver had committed the reported reckless driving offense. See generally OCGA §§ 40-6-390, 40-6-3 (a) (2) and (3); *Chavous v. State*, 205 Ga. App. 455 (422 SE2d 327).

The suppression hearing transcript contains no evidence to support a finding that the law enforcement officials simultaneously stopped appellee's vehicle on mere pretext. Further, the trial court's finding that the law enforcement officials had no articulable suspicion concerning appellee is without substantial basis; unrefuted evidence of record provides ample evidence of articulable suspicion of various traffic violations prior to the investigative stop. *McFarland*, supra. Also the record provides no substantial basis for the finding that the *sole* reason for the stop was to make sure that no criminal violations had taken place.

4. Appellee, citing *Thomas v. State*, 171 Ga. App. 306 (319 SE2d 511), and *Smith v. State*, 159 Ga. App. 20, 21 (2) (282 SE2d 677), asserts that a police officer is required to have an articulable suspicion before he can commence pursuit or even the mere following of a citizen. Specifically, appellee contends that the officers and investigator lacked any articulable suspicion before they commenced following his vehicle and thus the stopping of appellee, even after he committed observed traffic violations, was tainted.

This Court frequently has opined, " ' " '[w]here no circumstances at all appear which might give rise to an articulable suspicion . . . that the law has been violated, the act of following *and* detaining a vehicle and its occupants must be judged as an impermissible *intrusion* on the rights of the citizen.' " ' " (Citations omitted; emphasis supplied.) *Weaver v. State*, 208 Ga. App. 105, 106-107 (430 SE2d 60); *State v. Holton*, 205 Ga. App. 434, 435-436 (1) (422 SE2d 295); *Fowler v. State*, 195 Ga. App. 744, 745 (395 SE2d 254); *Brooks v. State*, 129 Ga. App. 109, 111-112 (198 SE2d 892). These cases, however, were focused on the intrusion caused by the ultimate detention of the citizen and are not authority supporting appellee's contention.

Both *Thomas*, supra, and *Smith*, supra, also are factually distinguishable. *Thomas* holds the police had an articulable suspicion that the car they *stopped* was transporting robbery perpetrators. *Smith*, supra at 22 (2), merely held that the acts of the defendant in speeding from a suspected burglary site, and in "floorboarding" and making an evasive turn with the car after a policeman pointed at it,

"would justify the police officers in following the car." Neither *Thomas* nor *Smith* affirmatively addresses whether articulable suspicion is required before the police can follow a citizen-driven motor vehicle, and do not support such a contention; as "questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been decided so as to constitute precedent." *Chives v. State*, 214 Ga. App. 786, 788 (449 SE2d 152).

The Fourth Amendment provides a constitutional safeguard against unreasonable searches and seizures, and unless police conduct in following a citizen-driven motor vehicle would, under the totality of the circumstances, result in an unreasonable seizure, no Fourth Amendment violation warranting evidence suppression occurs. Even absent articulable suspicion for a pursuit to constitute the seizure of a person, there must be either the application of physical force, however slight, or, where that is absent, submission to an officer's "show of authority" to restrain the subject's liberty. See generally *California v. Hodari D.*, 499 U. S. 621 (1) (a), (1) (b) n. 1, (1) (g) (111 SC 1547, 113 LE2d 690); compare *Conner v. State*, 205 Ga. App. 564, 566 (3) (422 SE2d 872). This is consistent with the objective test that "the police can be said to have seized an individual 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave'" (*Michigan v. Chesternut*, 486 U. S. 567, 573 (108 SC 1975, 100 LE2d 565)); as the latter test merely states "a *necessary*, but not a *sufficient*, condition" for a seizure effected through show of authority (*Hodari D.*, supra at 628). For a person to be seized through "show of authority," it also is required that the subject yield to such showing. Id. at 626, 628. In *Hodari D.*, supra at 629, it thus was concluded that "assuming [the officer's] pursuit . . . constituted a 'show of authority' enjoining [defendant] to halt, since [defendant] did not comply with that injunction he was not seized until he was tackled." Pretermitting whether the investigator had an articulable suspicion when he commenced following the vehicle, appellee never *submitted* to the show of police authority until the patrol units both activated their flasher lights; at that point, as above discussed, at least one or more of the officers had an articulable suspicion that appellee had committed various traffic offenses. It was not until appellee actually submitted to the show of authority that a seizure of his person occurred for Fourth Amendment purposes. Id. Compare the factors considered in *Chesternut*, supra at 575, with the operative facts of this case.

The result herein reached is consistent with *Brisbane v. State*, 233 Ga. 339, 343 (211 SE2d 294), where the Georgia Supreme Court, after having balanced the State's interest in the maintenance of community peace and security and having found it outweighed the

momentary inconvenience and indignity of investigative detention, concluded that " 'the state can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness.' [Cit.]" A most effective preventive therapy prescription is that of the traffic police merely following citizens who are driving motor vehicles; such action is not unreasonable within the meaning of the Fourth Amendment when conducted within *Hodari D.*, supra, parameters.

*Judgment reversed. Blackburn, J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur in the reversal of the trial court's order but not with all that is contained in the opinion.

1. Defendant filed a motion to suppress the result of any breath test administered and a motion in limine to restrict testimony about it, on the ground that he was not properly informed of his rights under Georgia's Implied Consent Law. He also filed a motion to dismiss the intoxicated driving charge altogether because, he alleged, the officer lacked an articulable suspicion to stop him. The court acted only on the latter motion and ordered the charge dismissed, relying on *State v. Golden*, 210 Ga. App. 800 (437 SE2d 492) (1993). That case reviewed the grant of a motion to suppress evidence.

Although the trial court procedurally could have granted a motion to suppress the evidence it deemed unlawfully obtained in this case, leaving the State to try the case without it, the conclusion that evidence was not obtained legally would not invalidate the charge itself. I find no authority for a court to dismiss a charge because of illegally seized evidence. All of the cases cited by Wright, both in the trial court and here, involve motions to suppress evidence.

As in or similar to the cases Wright depends on, he could have filed a motion to suppress evidence the legality of which was precluded by the lack of an articulable suspicion to stop his pickup truck. OCGA § 17-5-30. A motion in limine to exclude related testimony on the same ground would also be procedurally correct. See *State v. Johnston*, 249 Ga. 413, 414 (3) (291 SE2d 543) (1982). However, he did not do so, and his motions of this nature addressed another concern.

According to the statute, a motion to suppress "shall . . . state facts showing that the search and seizure were unlawful." The movant must state facts showing wherein the unlawfulness lay. *Mosier v. State*, 160 Ga. App. 415 (2) (287 SE2d 357) (1981). The legality of the stop "extend[ed] beyond the boundaries of defendant's motion to suppress," which involved the officer's compliance with the

Implied Consent Law, and thus was not determinable in that context. *Wilson v. State*, 197 Ga. App. 181, 183 (397 SE2d 744) (1990). See also *Davis v. State*, 203 Ga. App. 315, 316 (2) (416 SE2d 789) (1992).

Thus, Wright was not entitled to suppression of the evidence on the ground ruled on by the trial court, because he had not pursued such in his motion to suppress and motion in limine, and he was not entitled to dismissal of the charge for the reason asserted and ruled on. On the procedural error alone, without our even considering the underlying substance of the ruling, reversal of the court's order is warranted.

2. Even if the merits of the challenge to the traffic stop were properly before us, it is unrefuted that it was initiated because of erratic driving by Wright observed by all three officers. An objectively determined articulable suspicion of criminal behavior was present. Wright states that the sole issue is whether police officers are permitted to single out and follow an individual when they lack articulable suspicion of criminal wrongdoing. Assuming that issue was adequately presented before and preserved for review, I would agree with the majority's answer to it.

DECIDED APRIL 30, 1996.

*Robert E. Turner, Solicitor, Cynthia T. Adams, Assistant Solicitor*, for appellant.
*Sammons & Sammons, Walter G. Sammons, Jr.*, for appellee.