A97A1570. THE STATE v. AGUIRRE.
(494 SE2d 576)

MCMURRAY, Presiding Judge.

Defendant Aguirre stands indicted for a violation of the Georgia Controlled Substances Act, possession of more than one ounce of marijuana with intent to distribute. The State appeals the grant of defendant's motion to suppress evidence. *Held*:

The only testimony presented at the motion to suppress hearing was that of a sheriff's deputy who had stopped a pickup truck driven by defendant. The deputy testified that just past midnight he observed a pickup truck traveling on an interstate highway at well below the posted speed limit. The pickup truck was traveling only 49 mph in a location with a 70 mph speed limit. The deputy, who was sitting in the median running stationary radar, noticed as the pickup truck went by that it had a temporary license tag and that he could not read certain handwritten characters on the tag. The deputy followed the vehicle, and pulled up behind the pickup truck but could not read the handwritten characters on the tag. When the deputy was alongside the pickup truck, the driver placed his hand in a position which denied the deputy a view of his face. The deputy then initiated a traffic stop.

The traffic stop revealed that defendant was a licensed driver, the temporary tag was valid, and the pickup truck had been purchased less than a week prior to the stop. The deputy issued a courtesy warning to defendant indicating that documents had been checked because the deputy could not read the temporary tag. The deputy then asked for and received defendant's consent for a search of the vehicle. During that search approximately 20 pounds of marijuana were found.

"When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided

by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge 'hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.' [Cit.] Second, the trial court's decision with regard to 'questions of fact and *credibility* must be accepted unless clearly erroneous.' [Cit.] Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. [Cit.]" *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646). Furthermore, "[i]n a motion to suppress, '(t)he credibility of the witnesses and the weight to be accorded their testimony rest with the trier of fact, who is under no obligation to believe a witness, even in the absence of contradictory testimony. The factfinder may accept part of a witness' testimony and reject another part, and "(i)n the absence of evidence of record demanding a finding contrary to the judge's determination, (the appellate) court will not reverse the ruling sustaining a motion to suppress. (Cit.)" (Cit.)' *State v. Williams*, 193 Ga. App. 462 (388 SE2d 55) (1989)." *Anderson v. State*, 267 Ga. 116, 118 (475 SE2d 629).

The State maintains that three circumstances combined to authorize the stop of the vehicle driven by defendant: the speed at which the pickup truck was traveling, uncertainty regarding the expiration date of the temporary license tag on the pickup truck, and defendant's concealment of his face from the deputy. "An initial investigative stop requires that the arresting officer have only reasonable, articulable suspicion, not probable cause. *State v. Thomason*, 153 Ga. App. 345 (1) (265 SE2d 312) (1980). An officer may conduct a brief investigatory stop of a vehicle, if such stop is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. *Evans v. State*, 216 Ga. App. 21 (2) (453 SE2d 100) (1995)." *Edwards v. State*, 219 Ga. App. 239, 243 (3) (464 SE2d 851). Under the circumstances of the case sub judice the trial court was authorized to conclude that the deputy lacked such reasonable suspicion of criminal conduct and that the stop was predicated instead on a hunch or pretext.

Insofar as the speed of the pickup truck is concerned, the deputy acknowledged that the vehicle was traveling more than the applicable minimum speed of 40 mph and less than the maximum speed of 70 mph. While the deputy opined that the vehicle's speed being less than the maximum allowed suggested criminal conduct, this was not a hypothesis which the trial court as factfinder was obliged to embrace.

Nor was the trial court bound by the deputy's subjective interpretation of the posture assumed by defendant while driving. As

finder of fact, the trial court was authorized to view the deputy's hypothesis that defendant was attempting to conceal his identity as mere speculation.

The temporary license tag on the pickup truck was issued by the State of Ohio. The cases of *Edwards v. State*, 219 Ga. App. 239, supra, and *Burtts v. State*, 211 Ga. App. 840 (440 SE2d 727) relied upon by the State, involve vehicles which were stopped because they failed to display any license tag. In *Edwards*, the vehicle had no tag displayed on the rear license area and only after the officer stopped the car was he able to see a temporary tag hanging in the rear window. The vehicle in *Burtts* had no visible valid license plate but only a rental agency paper drive-out tag. The stops in these cases were held proper based on suspected violations of OCGA § 40-2-41 or § 40-2-8.

In the case sub judice, there was no statutory violation apparent. Although there was some testimony by the deputy suggesting that a clear plastic cover over the tag partially obscured it, the evidence as a whole would support a finding that the plastic cover had no adverse effect on the legibility of the tag. A photograph of the license plate as installed on the vehicle shows the tag number to be clearly visible and further testimony by the deputy concerning his inability to read the handwritten notations fails to repeat the suggestion that the plastic cover obscured visibility of the tag. See in this regard OCGA § 40-2-41.

The trial court was authorized to conclude that the vehicle driven by defendant properly displayed the temporary license plate issued by the State of Ohio in compliance with OCGA § 40-2-41 which requires that the vehicle "display the license plate issued to the owner for such vehicle. . . ." There is no statutory provision which would require the expiration date of this out-of-state tag to be legible to the deputy from his patrol car.

It follows that the trial court could reasonably conclude that the deputy did not have probable cause to believe that defendant had committed a traffic offense. The deputy's lack of probable cause removes the present case from the influence of the decision in *Whren v. United States*, 517 U. S. ___ (116 SC 1769, 135 LE2d 89) which holds that where law enforcement officers have probable cause to believe that a traffic violation has occurred, the decision to stop a vehicle is reasonable even where the stop is effected as a pretext for engaging in other law enforcement objectives. Compare *Jackson v. State*, 267 Ga. 130, 131 (5) (a) (475 SE2d 637); *State v. Holler*, 224 Ga. App. 66, 70 (2) (a) (479 SE2d 780); *Freeland v. State*, 223 Ga. App. 326 (1) (477 SE2d 633).

The order granting defendant's motion to suppress evidence does not state the reasoning upon which it is based. Insofar as this may be revealed by the colloquy recorded at the hearing, we note that the

superior court stated that "I find the testimony on why the defendant was stopped to be not credible," thus indicating, in our view, a conclusion that the stop was pretextual. In this connection we note that the deputy was "part of the ICE team," meaning "Interstate Criminal Enforcement" and was "trained . . . to look beyond the traffic stop for other possible violations." A possibly pretextual stop is considered by looking to what a reasonable officer would do rather than what an officer could do. *Brown v. State*, 188 Ga. App. 184, 187 (372 SE2d 514); *Tarwid v. State*, 184 Ga. App. 853, 855 (363 SE2d 63). In this instance, the evidence of record fails to show that the ruling of the superior court is clearly erroneous. Since the superior court was also authorized to conclude that defendant's consent to the search of the vehicle was a direct consequence of a pretextual stop, there was no error in the grant of defendant's motion to suppress evidence. *State v. Marcus*, 206 Ga. App. 385, 386 (2) (425 SE2d 351); *Brown v. State*, 188 Ga. App. 184, 187, supra; *Tarwid v. State*, 184 Ga. App. 853, supra.

*Judgment affirmed. Eldridge, J., concurs. Birdsong, P. J., Smith and Ruffin, JJ., concur and also concur specially. Andrews, C. J., and Beasley, J., dissent.*

RUFFIN, Judge, concurring specially.

I concur in the Court's opinion, but write separately to address certain concerns raised in arguments set forth by the dissent. The dissent posits its arguments that the trial court should be reversed on two grounds: (1) the court applied the wrong test in determining the reasonableness of the stop in light of *Whren v. United States*, 517 U. S. __ (116 SC 1769, 135 LE2d 89) (1996); and (2) "the trial court could not simply disregard the unrebutted testimony of the officer."

Before addressing these arguments seriatim, let me first assert that *Whren* is inapplicable, but even if it were applicable, it is factually distinguishable. What the dissent misperceives is the factual distinction between *Whren* and the instant case, as well as the age-old principle in our law that irrespective of how much an appellate court may disagree with the trial court, factual and credibility findings are binding on the appellate court unless "clearly erroneous." See *Edwards v. State*, 219 Ga. App. 239, 244 (3) (464 SE2d 851) (1995); *Anderson v. State*, 267 Ga. 116, 119 (2) (475 SE2d 629) (1996).

In *Whren*, police were patrolling a high drug area when they noticed a car at an intersection stop sign for an inordinate amount of time. When the youthful occupants of the car saw the police car, they turned right without signaling and sped away at an "unreasonable" speed. 135 LE2d at 93. After the police stopped the vehicle and one of the officers approached the car, the officer noticed what appeared to be two bags of crack cocaine in the hands of one of the occupants. The

officers decided to stop Whren and the other occupants of the car because of several traffic violations: failure to give full attention to the operation of the vehicle, turning without signaling, and speeding. Id.

There was essentially no known traffic violation in the instant case. The record reveals that around midnight on September 25, 1996, Lieutenant Jimmy Hightower of the Lowndes County Sheriff's Department was sitting in the median of Interstate 75 using radar to check for speeding motorists. He did not state that this was a high crime or drug area. He noticed that Aguirre was traveling 49 mph in a 70 mph zone, a slow speed but within the regulated speed limit. Hightower then noticed that, due to Aguirre's license tag cover, he could not read the expiration date for the temporary Ohio tag. Hightower said that he decided to pull behind Aguirre's vehicle to see if he could read the expiration date. According to Hightower, when he came alongside Aguirre's vehicle, Aguirre tried to cover his face with his hand. Hightower said that this aroused his suspicion and as a result, he initiated the traffic stop.

The state maintained that (1) Aguirre's speed on the highway, though not a traffic violation, (2) his attempt to conceal his face and (3) Hightower's inability to see the expiration date of Aguirre's temporary license tag authorized the stop. That is, according to the state, these three factors were the specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct warranting the investigatory stop. See *Edwards*, supra.

In its order, the trial court did not state its reasons for granting the motion to suppress. However, at the close of the suppression hearing, the trial judge said that he hoped driving under the speed limit at midnight on an interstate is not grounds to stop someone. Regarding the expired tag, the judge said "[t]he officer could not have seen the fine print [on the tag] because he wasn't in a position to see fine print. He was on the side of the road, not behind the vehicle when it came by." Finally, the judge concluded that "[p]utting your hand up by your face is no grounds to stop somebody and you add these [the tag, hand movement and low speed] together and I find the testimony on why the defendant was stopped to be not credible."

In addition to being factually distinguishable, *Whren* simply is inapplicable in this situation. The U. S. Supreme Court concluded in *Whren* that "[t]he temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective." 135 LE2d at 93. There is no evidence that the trial court in the instant case based its suppression of evidence on the fact that, although the arresting

officer had probable cause to believe that a traffic violation had occurred, the arresting officer used the traffic violation as a pretext to stop Aguirre for some ulterior motive, such as to check for drugs. Rather, the trial court was bothered by the fact the officer decided to stop a motorist who was traveling within the regulated speed limit because the officer could not read the expiration date on the motorist's license tag and the motorist moved his hand to his face while driving.

The dissent's other claim that the trial court could not disregard the officer's unrebutted testimony is unsupported by the record. Furthermore, it was within the court's authority to find either portions or all of the officer's testimony unbelievable, even absent contradictory testimony. *Anderson*, supra.

We are constrained by the "any evidence" rule to give deference to the trial court's determination of facts, and the evidence in the record does not demand a different result than that obtained by the lower court. See *Edwards*, supra.

I am authorized to state that Presiding Judge Birdsong and Judge Smith join in this special concurrence.

BEASLEY, Judge, dissenting.

I respectfully dissent because the trial court used the wrong test to determine the reasonableness of the stop and must reconsider the motion in light of *Whren v. United States*, 517 U. S. ___ (116 SC 1769, 135 LE2d 89) (1996).

The trial court, after stating the facts it had derived from the only witness, the officer, gave as the reason for granting the motion: "I find the testimony on why the defendant was stopped to be not credible." In *Whren*, the United States Supreme Court unanimously rejected the subjective pretext test to determine reasonableness of a motor vehicle stop under the Fourth Amendment. The officer's personal motivation, the "why" of the stop, is not determinative of its constitutionality. It does not depend on whether an officer, acting reasonably, would have made the stop for the reason given by the officer who stopped the accused.

Instead, the Court retained the objective test of whether the police had probable cause to believe that a traffic violation had occurred.[1] Ulterior motives do not invalidate justified conduct. As stated by the Court: "[T]he Fourth Amendment's concern with 'rea-

---

[1] Although the Court referred to "probable cause," it cited *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979), which recognized that an investigative stop is valid if there is "at least articulable and reasonable suspicion" of a violation. Id. at 663. See *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994). For a case applying the now-rejected pretext basis, see *Edwards v. State*, 219 Ga. App. 239, 244 (3) (464 SE2d 851) (1995).

sonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." (Emphasis in original.) *Whren,* supra, 135 LE2d at 98. Thus, the trial court's credibility determination, which rejected the articulated reason for the stop in favor of one not permitted by law and concluded the stop was illegal, constituted an ill-founded basis for granting Aguirre's motion.

Moreover, the trial court could not simply disregard the unrebutted testimony of the officer. " 'The direct and positive testimony of an unimpeached witness which is not inherently improbable, incredible or unreasonable and which is not contradicted, cannot be arbitrarily disregarded by the trier of fact. (Cits.)' *Nesbit v. Nesbit,* 241 Ga. 351 (2) (245 SE2d 303) (1978)." *Roberts v. State,* 267 Ga. 669, 676 (10) (d) (482 SE2d 245) (1997); see *State v. Stokes,* 185 Ga. App. 718, 719-720 (365 SE2d 477) (1988). Compare *Tate v. State,* 264 Ga. 53, 56 (3) (440 SE2d 646) (1994) (pre-*Whren,* plus majority detected some evidence to support finding that officer's testimony was not credible).

Because it is only arbitrary disregard that is prohibited, this does not conflict with the rule that, on a motion to suppress, "the credibility of the witnesses and the weight to be accorded their testimony rest with the trier of fact, who is under no obligation to believe a witness, even in the absence of contradictory testimony. The factfinder may accept part of a witness' testimony and reject another part, and in the absence of evidence of record demanding a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress." (Citations and punctuation omitted.) *Anderson v. State,* 267 Ga. 116, 118 (2) (475 SE2d 629) (1996). The rule is one of respect for the superior knowledge gained by the person who can observe and hear the witness directly. The point in this case is that the trial court's disbelief of the officer's stated motivation does not mean that the stop was unreasonable. The issue of reasonableness does not pivot on the validity or invalidity of subjective motivation. The trial court in this case must reconsider the evidence, governed by its own sense of weight and credibility, and apply the *Whren*-articulated test to what it finds.

The evidence presented to the trial court does not foreclose denial of the motion as a matter of law, so this Court cannot affirm the grant of the motion under the "right for any reason" doctrine. Compare *Frederick v. State,* 226 Ga. App. 540, 542 (1) (487 SE2d 107) (1997); *Hunt v. State,* 212 Ga. App. 217, 219 (441 SE2d 514) (1994). To the contrary, there is ample evidence to support denial of the motion.

The officer could see that the vehicle had a temporary tag but could not see the handwritten expiration date; that would give a reason to stop it, to assure compliance which was not readily ascertainable just by looking at the tag. The law provides that, with

respect to vehicles required to be registered in Georgia, "[i]t shall be the duty of the operator of any vehicle to keep the license plate legible at all times." OCGA § 40-2-41. The officer at some point realized that the tag was from Ohio, which may have subjected the vehicle's operation to OCGA § 40-2-90 (b) (3) instead. It must be assumed that the law of Ohio would prohibit operation past the expiration date of the tag, as nothing contrary is shown in the record and Aguirre has not suggested otherwise. See *Danzell v. Cannon*, 224 Ga. App. 602, 603 (481 SE2d 588) (1997) ("Absent proper introduction and proof of the law of a sister state, it is presumed that such foreign law is identical to Georgia's. [Cit.]"). Moreover, if Ohio law does not require that the license tag be kept legible at all times, the officer's mistake of law would not invalidate the investigative stop. *State v. Webb*, 193 Ga. App. 2, 4 (1) (386 SE2d 891) (1989) ("a mistaken-but-honest belief [as to law] may nevertheless demonstrate the existence of 'at least an articulable suspicion and reasonable grounds for the stop.' [Cit.]"); *State v. Wright*, 224 Ga. App. 753, 754-755 (482 SE2d 441) (1997) (same principle as to mistake of fact).

The point is not that the plastic covering did not obscure the tag, as stated on p. 738 of the majority opinion, but that the handwritten expiration date was not visible from a police car close to it. The trial court even found that "The officer could not have seen the fine print because he wasn't in position to see fine print." The court also found the officer could see the tag numbers. But that is not what the officer was concerned about; he was concerned about the expiration date of this obviously temporary tag, and the only way to check was to stop the vehicle and either look at the tag close up or ask the driver for the registration document.

The majority opinion distinguishes *Edwards v. State*, 219 Ga. App. 239 (3) (464 SE2d 851) (1995), and *Burtts v. State*, 211 Ga. App. 840 (440 SE2d 727) (1994), but there is little difference in the key factual circumstances. The real difference is that the trial judge in those cases believed the officer, as to the precise nature of what he saw and why he stopped the vehicle. In Aguirre's case the trial judge did not, as to the "why," and pivoted the ruling on that fact. *Whren* refused to adopt a test which depended on whether "a reasonable officer would have been motivated to stop the car by a desire to enforce the traffic laws." *Whren*, supra, 135 LE2d at 94.

In *Burtts* the vehicle was not one which "failed to display any license tag," as the majority opinion states. It had a drive-out license plate, which itself is valid so long as it is not used for more than 21 days. As recognized in that case, about the only way to assure that the vehicle is validly on the road is to stop it and check the documents the driver must carry. So the stop of a vehicle with such a license tag would be valid, as it is necessary in order to assure the

vehicle is in compliance with the law. That is not so with a permanent tag, which has the current year displayed in numerals large enough and clear enough to read without stopping the vehicle.

In *Edwards*, as in *Burtts*, the vehicle was not one which "failed to display any license tag," as the majority opinion states. Edwards' vehicle had the authorized temporary tag but it was hanging in the rear window rather than on the rear license plate area. The officer did not see it until after he stopped the car. The stop was valid because there was a reasonable belief that the vehicle did not have a "license plate . . . fastened to the rear of the vehicle in a position so as not to swing and . . . at all times plainly visible." OCGA § 40-2-41. Also, because Edwards was traveling 45 mph in a 65 mph zone on the interstate and it was just before midnight, the slow speed and late hour raised a reasonable articulable suspicion that the driver might be under the influence. The combination of these factors legitimized the stop. "[W]hile probable cause is necessary for an arrest, it is not for an investigative stop"; an investigative stop is justified by " 'specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. [Cit.]' " *Burgeson v. State*, 267 Ga. 102, 105 (475 SE2d 580) (1996), citing *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968). The specific reasonable articulable suspicion must be based on the totality of the circumstances. *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981).

Aguirre, too, was traveling late at night well below the speed limit in the center lane of the interstate highway (at 12:14 a.m. going 49 mph in a 70 mph maximum, 40 mph minimum zone). The officer was concerned that the driver might be impaired and, having noticed as the vehicle went by him that it bore a temporary tag, he determined to check its validity. When the officer pulled up beside Aguirre, he "threw his hand up covering up his face . . . he took his hand like this (indicating) trying to cover up his face like that with his hand," and the officer dropped back to look at the tag but when he looked at it he could not see the *writing* on the temporary paper tag, "the handwritten numbers with an ink pen" which showed "the expiration date or whatever." These five factors, i.e., time, speed, location, effort to conceal, and possible expired tag, caused the officer to stop the vehicle to determine at least whether the tag had expired, and secondarily to warn that by driving so slow in the center lane Aguirre would "get run over," in the officer's words. A vehicle being driven so slow under these circumstances in addition roused his suspicion of criminal activity beyond the license plate possible expiration. According to *Whren*, that would not invalidate the stop.

The trial court's findings and decision on a motion to suppress must have a substantial basis. *Chastain v. State*, 196 Ga. App. 50 (1) (395 SE2d 570) (1990). The judgment should be reversed and the

case remanded for a new ruling based on the law in force.

I am authorized to state that Chief Judge Andrews joins in this dissent.

DECIDED DECEMBER 5, 1997.

*H. Lamar Cole, District Attorney, Robert T. Gilchrist, Assistant District Attorney*, for appellant.

*J. Converse Bright*, for appellee.